15521

DILL *ET AL.* v. SOVEREIGN CAMP, W. O. W.

(25 S. E. (2d), 285)

November, 1943.

*Mr. W. B. McGowan,* of Greenville, Counsel for Appellant,

*Mr. H. D. Hawkins,* of Greer, S. C., and *Messrs. Williams & Henry,* of Greenville, S. C., Counsel for Respondents,

April 1, 1943.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous opinion of the Court:

On December 15, 1924, the appellant, a fraternal benefit insurance society, incorporated under the laws of the State of Nebraska, and which by change of name is now known as Woodmen of the World Life Insurance Society, issued to John J. Dill its benefit certificate, by the terms of which it promised to pay to the insured's mother, Lula Dill, as beneficiary, upon the death of the insured, the sum of $1,000.00. The beneficiary died intestate on or about November 22, 1940, and the plaintiffs, as administrators of her estate, brought this action for the recovery of the face amount of the policy, basing their claim upon the presumptive death of the insured as of July 17, 1932, he having been absent and unheard of for a period of more than seven years from that date.

The appellant defended upon the ground that conceding the absence of the insured for a period of more than seven years, unheard of, no recovery could be had under the provisions of the constitution, laws, and by-laws of the Insurance Society which entered into and formed a part of the contract between the insured and appellant. That the .by-

laws in force when the benefit certificate was issued, and at the time of the disappearance of the insured, provided, among other things, as follows: "Fourth, there shall be no liability upon this Society under any beneficiary certificate of membership in any case where a legal presumption of the death of such member arises from absence or disappearance until the full term of his life expectancy at the time he disappears, according to the Society's table of life expectancy, as set out in Section 158 hereof, has expired; and then only in case all payments, dues, special payments, and all other sums, now or hereafter required under the laws of this Society be paid on behalf of such member within the time required until the expiration of the term of such life expectancy. In the event the payments are not made as above provided, said member shall stand suspended and cannot thereafter again become a member except in the manner as provided in the Constitution, Laws and By-Laws of this Society."

It is alleged and contended that by virtue of the foregoing provision there is no liability upon the society for the presumptive death of John J. Dill, the insured, who was 25 years of age at the time of his disappearance, until the expiration of his full life expectancy according to the society's table of life expectancy, which would not occur until 42.45 years from July 17, 1932; and then only in case that all dues and special assessments should be paid on behalf of the insured until the expiration of his life expectancy.

By stipulation between the parties, a jury trial was waived, and the case upon an agreed statement of facts was submitted to the Circuit Judge, who found that the insured was dead, and held the by-law null and void, and ordered judgment in favor of the plaintiffs for the full amount of the policy with interest, less certain monthly advances made by the defendant.

The parties further stipulated: "That John J. Dill left his home sometime during the year 1926 and was employed as a seaman by various shipping concerns throughout the

country. As a seaman he traveled to many parts of the world prior to July 17, 1932, but was in frequent communication with his mother and other members of his immediate family. At intervals he sent his mother and sisters presents and souvenirs gathered during his travels. The last communication from him was a letter addressed to his sister, Mrs. Ruthel Dill Crain, dated July 17, 1932, a portion of which is attached hereto marked Exhibit "C" for identification. Nothing further, either directly or indirectly, has been heard from the said John J. Dill by members of his family or other persons known to them. Members of his family have exhausted every means known to them in their efforts to ascertain his whereabouts. His continued absence and continued silence cannot be explained and a reason therefor cannot be ascribed."

From the judgment entered, the Insurance Society appeals. It urges but one ground for the reversal of the judgment. The only question in the case is as to the effect of the by-law upon the presumption of death after an absence of seven years, unheard of.

It is the contention of the plaintiffs that the by-law under consideration is unenforceable because it contravenes the common-law rule of evidence which is a part of the public policy of this State and for the additional reason that it is both unreasonable and unjust. The lower Court in a well-considered order held that the by-law is void on both of these grounds.

The rule as to the circumstances under which unexplained absence shall be deemed to have raised a presumption of death is so well settled in this jurisdiction that it has acquired substantially the force of a statute. It has been announced and applied by the Court, and acquiesced in by the legislature. The rule that seven years of continued absence without intelligence raises the presumption that the absentee is dead was a part of the common law of England at the time it was adopted by this

commonwealth. It is, therefore, a part of our public policy. *In re: Duncan's Estate,* 190 S. C., 211, 2 S. E. (2d), 388; Wigmore on Evidence, 3d Ed., Volume 9, Section 2531a, page 464; Jones on Evidence, 4th Ed., Volume 1, Section 61, page 108. And it is never allowable for individuals to contract in contravention of the expressed public policy of the State. *Central Nat. Bank v. Kehoe,* 132 S. C., 94, 128 S. E., 861.

There is a wide difference of opinion as to whether a by-law of a mutual benefit society preventing a recovery upon the presumption of death after seven-years' absence is valid. From time to time insurance companies and beneficial associations have attempted, by contract or by-law, to abrogate this presumption, either by requiring actual proof of death or by postponing operation of the presumption during the normal period of life expectancy of the absentee; but the Courts have generally ruled against such an attempt to regulate the principles of evidence by private contract.

In a majority of the jurisdictions where this question has been presented, such a by-law has been held invalid on the ground that it infringes upon the common-law rule or statute raising a presumption of death after seven-years' absence without being heard from, and that it is thus beyond the power of such associations to enact. This conclusion has been · reached, correctly we think, whether the by-law was adopted before the issuance of the benefit certificate, or after. We are also in agreement with the conclusion reached that such by-laws are invalid upon the ground that they are unreasonable.

Perhaps the leading case to the effect that a by-law of this kind is valid, is the Illinois decision in the case of *Steen v. Modern Woodmen,* 296 Ill., 104, 129 N. E., 546, 17 A. L. R., 406, in which we find collected all authorities in support of that position up to that time. The Supreme Court of Kansas, in a well-considered opinion, has held to the

contrary in the case of *Hannon v. Grand Lodge, A. O. U. W.,* 99 Kan., 734, 163 P., 169, L, R. A., 1917-C,. 1029, and therein is cited a considerable number of authorities in support of the rule announced. Other decisions may be found in annotations on the subject in 17 A. L. R., 418, 36 A. L. R., 982, and 40 A. L. R., 1274.

Discussing the provisions of a by-law substantially like the one we now have before us, the Supreme Court of Oklahoma, in *Modern Woodmen of America v. Michigan,* 101 Okl., 217, 225 P., 163, 169, 36 A. L. R., 971, said:

"By the provisions of the by-law in question, it is provided that death may be presumed in this case, after the expiration of 'the full terms of a member's expectancy of life according to the National Fraternal Congress Table of Mortality.' The Supreme Court of Illinois argues that such a provision is not contrary to public policy, because it says: 'We do not see how it can reasonably be said that a rule of evidence based upon human experience, rather than upon necessity and convenience, is contrary to public policy.'

"The fallacy of this line of reasoning is easily apparent. This table of mortality is made by a computation of the average length of life of all the millions of men who have been insured by companies furnishing the data. It is not based upon the length of lives of men who, like the insured here, left home and were missing for seven years or more, but it is based upon the length of the lives of men, all but a very small per cent. of whom stayed at home. It would be impossible, of course, to know the average length of life of those insured who were missing for seven years, but if same could be prepared, it would more than likely show that these missing men, disappearing under circumstances satisfying this rule, live an average of much less than seven years after their disappearance."

The Supreme Court of Iowa, in *Haines v. Modern Woodmen,* 189 Iowa, 651, 178 N. W., 1010, 1015, passing upon

a by-law similar to this (which in effect set aside the presumption of death) had this to say: "To say the very least, the right to thus deprive the court of the exercise of its ordinary functions, and to add to or take from a proved fact the probative force and effect to which it is otherwise naturally entitled, is one which will be hedged within very narrow bounds. To hold otherwise, and permit the insurer to restrict its liability by arbitrarily enlarging or minimizing the effect of competent evidence, is to arm it with power which renders practically worthless the protection which it professes to furnish to the insured.  *  *  *  Once grant the insurer the right to limit its liability upon an existing contract by the enactment of by-laws which deprive the insured of the benefit of the established and settled law of evidence, and a door is opened to intolerable abuse. Under the guise of establishing a rule of evidence, the society may in effect absolve itself from all liability for the performance of its agreements. Such is indeed its practical effect in the case before us. When the contract was made, it was and still is competent under the law of the state to establish the fact of death by proof of certain facts from which such a presumption arises. This right was a material element or factor in the value of the promised benefit to the member and his beneficiary. Permit the insurer by its own arbitrary act to declare that it will not pay the benefit upon such legitimate proof as will satisfy a court of justice of a member's death, nor will it pay at all, except upon performance of a condition which cannot be satisfied in an average lifetime, and then only on the further condition that during such period the beneficiary shall continue to pay a burdensome tribute into the insurer's treasury, and you will leave nothing of value in a contract of fraternal insurance of which the member may not be 'fraternally' despoiled at the uncontrolled will or whim of the insurer."

The appeal presents a new question in this jurisdiction, but we are in accord with the sound reasoning of those Courts which, in passing upon the validity of by-laws similar to the by-law now before us, have held them to be null and void as violating public policy, and upon the ground of unreasonableness. Upon these grounds, we hold this by-law to be absolutely void, regardless of whether it was adopted before the issuance of the benefit certificate, or after.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.