0049

James LONG, Mary Long, and Steve Long, Plaintiffs, v. Samuel Lawson ADAMS, Falls Auto Sales, Inc., The Travelers Insurance Company and U. S. Fire Insurance Company, Defendants, of which The Travelers Insurance Company is Appellant, and U. S. Fire Insurance Company is Respondent. Appeal of TRAVELERS INSURANCE COMPANY.

(312 S. E. (2d) 262)

Court of Appeals

*Forrest C. Wilkerson,* of *Roddey, Carpenter & White, P.A.,* Rock Hill, *for appellant.*

*Melvin B. McKeown,* of *Spratt, McKeown & Spratt,* York, *for respondent.*

Jan. 23, 1984.

GOOLSBY, Judge:

The issue which we must decide in this declaratory judgment action is whether primary coverage exists under a garage liability policy issued by the appellant The Travelers Insurance Company in North Carolina to a North Carolina used car dealer that loaned an automobile to a "garage customer" who was subsequently involved in an automobile collision in South Carolina. We hold that the policy does not provide primary coverage and we reverse the judgment below.

Falls Auto Sales, Inc., a North Carolina corporation with its principal place of business in the Town of Kings Mountain, North Carolina, is an automobile sales company that deals primarily in the retail sale of used cars. Ed Falls, an officer and the principal stockholder of the corporation, on September 12, 1978, loaned a Lincoln Continental automobile registered to Falls Auto Sales to his friend, the defendant Samuel Lawson Adams. The latter is a South Carolina resident and an employee of Armour & Company. Adams' purpose in borrowing the automobile was to drive his family to the beach. A comprehensive automobile garage liability policy issued in North Carolina to Falls Auto Sales was then in effect. Also in effect at that time was an automobile liability insurance policy issued to Adams by the respondent U. S. Fire Insurance Company. While en route to the beach on September 12, 1978, in the Lincoln Continental, Adams collided at an intersection in South Carolina with a pickup truck driven by the plaintiff James Long. Injured in addition to the driver of the pickup were its two passengers, the plaintiffs Mary Long and Steve Long.

The Longs brought this action seeking a determination of

the coverage afforded by the policies of insurance issued by The Travelers and U. S. Fire Insurance. Because the lower court determined that the former's policy provides primary coverage, it ordered The Travelers to defend the actions initiated by the Longs.

In reaching its conclusion that The Travelers' garage liability policy affords primary coverage, the lower court found the policy ambiguous because the terms of the policy include Adams as a "person[] insured" while the endorsement excludes him as a "garage customer" as the term is commonly understood. As it resolved the conflict between the policy and the endorsement in Adams' favor, the lower court applied the rule that, where an insurance contract is capable of two reasonable interpretations, the construction most favorable to the insured will be adopted. The Travelers argues, however, that the existence of a conflict between the terms of the policy and the endorsement creates no ambiguity and that a construction of the terms of the policy and the endorsement in accordance with their plain meaning excludes Adams from primary coverage. The Travelers further contends that Adams falls within the definition of a "garage customer" as defined by the endorsement.

The general terms of the policy in issue clearly conflict with an attached endorsement. The policy provides:

> IV. Persons Insured
> Each of the following is an *insured* under this insurance to the extent set forth below:
> A. Under the Garage Bodily Injury and Property Damage Liability Coverages:
> (1) ...
> (2) ...
> (3) with respect to the *automobile hazard:*
> (a) any person while using, with the permission of the *named insured,* any *automobile* to which the insurance applies under the *automobile hazard,* provided his actual operation or ... his other actual use thereof is within the scope of such permission. ... (Emphasis in original.)

According to the policy, the term

> "automobile hazard" means that one of the following

hazards for which insurance is afforded as indicated in the declarations:
Automobile Hazard 1.

    (1) ...

    (2) ...

    (3) the ownership, maintenance or use of any *automobile* owned by the *named insured* while furnished for the use of any person. (Emphasis in original.)

The endorsement, on the other hand, states:

In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that *garage customers* are not insureds with respect to the *automobile hazard* except in accordance with the following additional provisions:

1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the *garage customer* and the limits of such insurance are sufficient to pay damages ... up to the amount of the *applicable financial responsibility limit*, no damages ... are collectible under this policy.

2. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the *garage customer*, and the limits of such insurance are insufficient to pay damages ... up to the amount of the *applicable financial responsibility limit*, then this policy shall apply to the excess of damages. ...

3. ...

4. As used in this endorsement: ... "garage customer" means any person other than (1) an employee, director, stockholder, partner or member of the *named insured* or a resident of the same household as the *named insured*, such employee, director, stockholder, partner or member. ... (Emphasis in original.)

The limited coverage endorsement attached to The Travelers policy, the lower court said, "would be void and unenforceable as a matter of law if the policy had been issued in" South Carolina [*see Potomac Insurance Co. v. Allstate Insurance Co.*, 254 S. C. 107, 173 S. E. (2d) 653 (1970)]; however, we note that the policy was not issued in this state. It was issued in North Carolina where such a limiting provision

is clearly valid. *Allstate Insurance Co. v. Shelby Mutual Insurance Co.*, 269 N. C. 341, 152 S. E. (2d) 436 (1967). Because the insurance policy was written in North Carolina and delivered to a North Carolina corporation having its principal place of business in that state, the law of North Carolina governs all matters bearing on the interpretation and validity of the contract since the limited coverage endorsement is not intrinsically immoral under South Carolina law. *See* J. & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 7079 (1981); 2 G. COUCH, CYCLOPEDIA OF INSURANCE LAW § 16:2 (2d ed. 1959); *see also Barkley v. International Mutual Insurance Co.*, 227 S. C. 38, 86 S. E. (2d) 602, 603 (1955); *Jones v. Prudential Insurance Co.*, 210 S. C. 264, 42 S. E. (2d) 331 (1947); *Cantey v. Philadelphia Life Insurance Co.*, 166 S. C. 181, 164 S. E. 609 (1932); *Columbian Building & Loan Assoc. v. Rice*, 68 S. C. 236, 47 S. E. 63 (1904); *cf., e.g., Simpson v. Motorists Mutual Insurance Co.*, 494 F. (2d) 850 (7th Cir. 1974), *cert. denied*, 419 U. S. 901, 95 S. Ct. 184, 42 L. Ed. (2d) 147 (1974).

The two cases relied upon by the respondent to support its view that the insurance contract issued by The Travelers must be construed in accordance with South Carolina law have no application here. The case of *Wiggins v. Postal Telegraph Co.*, 130 S. C. 292, 125 S. E. 568 (1924), involved an out-of-state contract which violated South Carolina's gambling laws. As for *Dill v. Sovereign Camp, W.O.W.*, 202 S. C. 401, 25 S. E. (2d) 285 (1943), the insurance contract there in question does not appear to have been made and delivered in a foreign state.

The lower court was wrong, we believe, to apply to the contract before us the principle that where the language is either ambiguous or is capable of two reasonable interpretations that construction will be adopted which is most favorable to the insured. This principle has no application here because, in our opinion, there is no ambiguity in the language of the insurance contract and there is only one reasonable interpretation which that language can fairly be accorded. *Barkley v. International Mutual Insurance Co., supra.*

When construing an insurance policy containing an endorsement, the policy and the endorsement are to be read together. The policy remains in full force and

effect to the extent its terms are modified by the words of the endorsement. *See* 1 G. COUCH, CYCLOPEDIA OF INSURANCE LAW § 15:30 (2d ed. 1959); 13A J. & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 7537 (1976). If a provision of the policy conflicts with a provision of the endorsement, the latter controls. *McIntosh v. Whieldon*, 205 S. C. 119, 30 S. E. (2d) 851 (1943). Here, as we observed, a conflict exists between the terms of the policy and the endorsement's provisions; consequently, the endorsement governs. The conflict creates no ambiguity. An application of the endorsement's terms according to their plain and ordinary meaning clearly excludes Adams from primary coverage by The Travelers' policy. At the time of the collision, he was a "garage customer" as defined by the limited coverage endorsement. But for the endorsement, Adams would be deemed a "person[] insured" under the omnibus clause.

Our conclusion is supported, we think, by a North Carolina case, *Allstate Insurance Co. v. Shelby Mutual Insurance Co., supra.* There, Concord Motors, Inc., an insured of Shelby Mutual Insurance Company, operated an automobile sales business. One of its automobiles driven by a prospective purchaser struck and injured a minor child. At the time of the accident, Concord Motors was covered by a garage liability policy. The driver was covered by a policy issued by Allstate Insurance Company. A declaratory judgment action was brought to determine the nature, extent and priority of the coverage provided by both policies. The trial court found both the Shelby Mutual policy and the Allstate policy afforded primary coverage to the driver. Both companies appealed with Shelby Mutual contending that its garage liability policy provided no coverage at all.

An endorsement was attached to the Shelby Mutual policy in consideration of a reduction in the premium. The term "persons insured" was defined in the policy as amended by the endorsement as follows:

> Each of the following is an insured ... except as provided below:

> (3) ... any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation ... is within the scope of such permission:

(a) ...

(b) any other person but only if no other valid and collectible automobile liability insurance, *either primary or excess*, with limits of liability at least equal to the minimum limits specified by the Financial Responsibility Law of the state in which the automobile is principally garaged, is available to such person. ... (Emphasis added.)

152 S. E. (2d) at 439.

In holding that the garage liability policy issued by Shelby Mutual did not cover the accident involved, the North Carolina Supreme Court observed:

Here, the Shelby Mutual policy is not ambiguous. ... The ... policy expressly makes the existence of such "excess" policy an event which sets the Shelby Mutual's exclusionary clause into operation. It states that a person in the category of [the driver here] is an insured thereunder, "but only if no other valid and collectible automobile liability insurance, *either primary or excess* ... is available to such person." (Emphasis added.)

152 S. E. (2d) at 443.

The language in the Shelby Mutual endorsement is very similar to that in the first and second paragraphs of the endorsement attached to The Travelers' policy and affixed also in consideration of a reduced premium. As we stated earlier, the policy as amended by the endorsement is not ambiguous. It too expressly excludes primary coverage where the "garage customer" possesses other insurance. Here the driver, Adams, has other insurance.

But U. S. Fire Insurance maintains and the lower court held that Adams was not a "garage customer" at the time the collision occurred. The lower court reached that decision by ignoring the definition of the term "garage customer" contained in the endorsement itself.

The term "garage customer," quoted above, is plainly defined in the endorsement. Basically, a "garage customer," as defined by the endorsement to the policy, is anyone not connected with the policyholder's business and not residing with someone who is. As we infer from the lower court's order and descry from the record, Adams did not fall into either cate-

gory when the wreck happened. Indeed, no contention was made below that he did, at least so far as we can tell. The definition of "garage customer" contained in the endorsement, of course, is controlling particularly since the definition is plain and unambiguous. *See* 13 J. & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 7483.25 (1976); *see also Woods v. Nationwide Mutual Insurance Co.*, 295 N. C. 500, 246 S. E. (2d) 773 (1978); *Hardin v. The American Mutual Fire Insurance Co.*, 261 N. C. 67, 134 S. E. (2d) 142 (1964).

Finally, U. S. Fire Insurance contends that a latent ambiguity exists. Our Supreme Court observed in *Jennings v. Talbert*, 77 S. C. 454, 58 S. E. 420 (1907), that ambiguities may be either patent or latent. The distinction is

> that in the former case the uncertainty is one which arises upon the words of the will, deed or other instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe, while in the latter case the uncertainty arises, not upon the words of the will, deed or other instrument as looked at in themselves, but upon those words when applied to the object or subject which they describe. [Citation omitted.] Thus, where there is conflict in words or clauses of a will or other instrument, the ambiguity is patent. Where, however, there is no defect upon the face of the paper, but when attempting to put it into effect it appears that there is uncertainty, as for instance where there are two legatees of the same name or two pieces of property which the description fits equally well, the ambiguity is latent.

77 S. C. at 456, 58 S. E. 420; *see also Hann v. Carolina Casualty Ins. Co.*, 252 S. C. 518, 167 S. E. (2d) 420 (1969). If there is a latent ambiguity present here, it is remarkably well hidden. We see no evidence of one. *Cf., e.g., Hastings v. Union Fire Insurance Co.*, 130 S. C. 326, 125 S. E. 923 (1924), (where fire insurance policy covered two barns and the question concerned whether the policy insured a third barn destroyed by fire). The definition of a "garage customer" contained within the endorsement, the record shows, unmistakably points to Adams and others in his category. No evidence exists to the contrary and the lower court found none.

Because Adams was, under the policy as amended by the

endorsement, a "garage customer" and because other valid and collectible insurance is available to him, The Travelers' garage liability policy does not afford Adams primary coverage for the accident in which he was involved on September 12, 1978.

Accordingly, the judgment below is

Reversed.

SHAW and CURETON, JJ., concur.