**Orma G. MOORE, Plaintiff-Appellant,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCATION, Defendant-Appellee.**

No. 86–4080.

United States Court of Appeals, Fifth Circuit.

Feb. 5, 1987.

C.R. McRae, Margaret P. Ellis, Pascagoula, Miss., for plaintiff-appellant.

Harry R. Allen, Cynthia M. Sarthou, Gulfport, Miss., for defendant-appellee.

Before GARZA, DAVIS, and JONES, Circuit Judges.

GARZA, Circuit Judge:

## BACKGROUND

This case concerns a dispute over recovery under an insurance policy held by decedent Francis E. Shine. On January 26, 1979, appellant Orma Moore left Boca Raton, Florida, with Francis Shine, Diane Shine, and Patricia Shine for a ski holiday in Colorado. At approximately 3:30 a.m. on January 27, 1979, the group was involved in a two-car accident on U.S. 98 in George County, Mississippi. Francis Shine and his wife, Diane Shine, a passenger in the front seat, were both pronounced dead at the scene. Patricia Shine and her friend Mr. Orma Moore were asleep in the back seat of the Ford van; though they suffered various injuries, they survived. Mr. Moore received medical treatment immediately after the accident at George County Hospital in Mississippi and then returned to Florida—his state of residence.

Francis Shine was the named insured on an automobile insurance policy issued by appellee United Services Automobile Association (USAA) which covered the vehicle involved in the crash. This policy provided uninsured motorist coverage with limits on recovery of $100,000 per person and $200,000 per accident for each of Shine's two vehicles, the Ford van and a Toyota. The policy also provided $100,000 liability coverage in case of Shine's negligence and medical payments up to $5,000 per person for any medical care required due to an accident. The other car involved in the crash was not covered by insurance.

USAA began an investigation of the accident by hiring some independent adjusters to evaluate the underlying facts and assess liability. One of these adjusters, Jack Pane, phoned Moore in Florida to discuss the automobile accident. Moore claims that Pane was interested only in obtaining a release absolving USAA of any financial liability for the accident. Moore did tell Pane that he had hired counsel, a Mr. Mark Schecter, but Moore refused to make any statements regarding the collision. Pane called Mr. Schecter and inquired about Moore's medical condition and the potential claim on any insurance proceeds. Schecter told Pane only that Moore was not hospitalized and that his medical bills were being taken care of by Southern Bell Telephone Company, Moore's employer; no other substantial information about the accident was discussed. After this telephone conversation Pane wrote Schecter and requested that he contact Pane upon receipt of the letter. Both sides agree that no further contact occurred between the parties.

On March 27, 1979, the estate of Francis Shine brought suit against USAA for uninsured motorist benefits.[1] USAA defended Shine's suit by claiming that any negligence by the uninsured motorist was secondary to the primary negligence of Shine himself. The jury considered Shine's negligence, proximate cause, and intervening cause and found in favor of Shine's estate. The jury awarded the estate $135,000, but an appeal to this Court reduced the award to $100,000, the "per person" recovery limit under Shine's insurance policy.[2]

---

[1]  Civil Case No. S79–0125(C) (S.D.Miss.).

[2]  *Shine v. United Services Automobile Assn.,* 680 F.2d 1387 (5th Cir.1982).

USAA originally offered the estate of Diane Shine, wife of the insured, only $10,-000 to settle its claim. However, after the adverse decision in the trial of the claim brought by Francis Shine's estate, Diane Shine's estate demanded $100,000 of uninsured motorist benefits too. Patricia Shine had previously settled her claim for injuries against USAA for $65,000. USAA's internal accounting procedures attributed the payments made to Patricia Shine as payments due under both liability and uninsured motorist coverage in order to procure a general release from Patricia Shine for all possible claims. Since Diane Shine's estate wanted $100,000 to settle out of court, the $65,000 settlement with Patricia Shine was recoded as payments due under the liability portion of the insurance policy. Diane Shine's estate was paid the remaining $100,000 of uninsured motorist benefits.[3]

A few years later, on May 30, 1984, plaintiff-appellant Moore filed a direct suit against USAA both for the insurer's liability coverage and the uninsured motorist coverage. Moore advanced two theories of recovery. The first theory of recovery depends upon the "stacking" of insurance policies. Each of Shine's vehicles was covered for uninsured motorist benefits of $100,000 recovery per person, $200,000 per accident. Moore argues that the unused portion of Shine's policy covering the vehicle that wasn't involved in the accident (the Toyota) should be "stacked" on top of the damaged vehicle policy (the Ford van) to permit Moore to recover uninsured motorist benefits. Second, Moore claims there is no limit on the liability coverage under Shine's policy. Moore contends that USAA could have paid the claims of the decedents' estates out of liability coverage instead of uninsured motorist coverage. If USAA had done so, Moore could now successfully claim uninsured motorist benefits

under Shine's policy without the $200,000 limit already having been paid out to the estates of Francis and Diane Shine. USAA's failure to provide insurance benefits to Moore is alleged as an independent tort of bad faith which entitles Moore to punitive damages. USAA responded: (1) that it had paid the full $200,000 "per accident" limit under the uninsured motorists provision of Shine's policy; and (2) that Moore's suit for Shine's negligence could not be brought against USAA directly and was barred by the statute of limitations.

The district court agreed with Moore that available benefits under Shine's policy were not exhausted—uninsured motorist benefits still existed under the Toyota portion—but granted summary judgment in favor of USAA by finding that Florida law prohibited the "stacking" of insurance policies at the time relevant to this lawsuit and that USAA properly paid the $200,000 recovery out of uninsured motorist benefits. The district court also concluded that there was no evidence of an independent tort supporting the award of punitive damages. Moore appeals from this adverse ruling on summary judgment.

## DISCUSSION

There are two issues of substance on appeal: (1) whether Mississippi law or Florida law governs the case; and (2) whether the district court properly entered summary judgment for USAA.

### A) Choice of Law

The district court in this diversity case was bound by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply the choice of law rules utilized by the state in which it sits. Mississippi applies the "center of gravity" test to determine which state's

---

**3.** At this point Francis Shine's estate and Diane Shine's estate had each received $100,000, which depleted the $200,000 uninsured motorist benefits for the Ford van available under Francis Shine's policy. USAA had settled with Patricia Shine for $65,000 and obtained a release from her barring any other claims. Although USAA

had contacted Moore and his attorney and requested information about the accident, USAA never heard from Moore or Schecter again. USAA apparently believed that Moore either had no claim for benefits or did not desire to make such a claim. Moore received no insurance benefits from USAA.

law controls a suit. *Craig v. Columbus Compress & Warehouse Co.*, 210 So.2d 645 (Miss.1968); *Boardman v. United Services Automobile Assn.*, 470 So.2d 1024 (Miss. 1985) (certified by Fifth Circuit to Mississippi Supreme Court). The "center of gravity" test is an evaluation of which state has the greatest concern for the rights and liabilities of the parties to the litigation. *Tideway Oil Programs, Inc. v. Serio*, 431 So.2d 454, 458 (Miss.1983). According to the Mississippi Supreme Court decision in *Boardman*, the factors to be considered in a contract action include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, and place of business of the parties. *Boardman*, 470 So.2d at 1032; RESTATEMENT (2d) Conflict of Law § 188 (1971).

Francis Shine was a resident of Florida and entered into an insurance contract with USAA while in Florida. Both cars covered by the USAA policy were registered in Florida, and all occupants of the vehicle at the time of the accident were Florida residents. The only contact with Mississippi was the fortuitous circumstance that the automobile crash occurred there. The district court concluded that Florida has by far the most significant relationship to the parties and issues involved in this litigation.

Moore acknowledges that Mississippi attempts to ascertain where a lawsuit's "center of gravity" is in order to determine which state's substantive law controls. But Moore emphasizes that the *Boardman* Court added two qualifications to the choice of law test. First, the law of a single state may not control every issue in a case—different issues may have a different "center of gravity" and may, therefore, require application of a different state's law. 470 So.2d at 1031. Second, even though another state's law should be applied under the "center of gravity" test, where that state's law "is contrary to the deeply ingrained and strongly felt public policy of this state [Mississippi] ... we

may nevertheless apply and enforce this state's positive substantive law." *Id.* (citing *McNeal v. Administrator of Estate of McNeal*, 254 So.2d 521, 524 (Miss.1971)).

Moore argues that Mississippi has long recognized that the insurance business is affected with a public or quasi-public interest; the Mississippi Motor Vehicle Act and Uninsured Responsibility Act have both been liberally construed as a matter of public policy to protect innocent motorists. Therefore, according to Moore, the district court failed to consider the "public importance" of Mississippi's policy that protects motorists and allows Mississippi law to control the "stacking" of insurance policies. This choice of law is crucial: Mississippi arguably allows the "stacking" of insurance policies to enhance an accident victim's recovery, but a Florida statute in effect from 1976–1980 strictly prohibited the "stacking" of policies to gain uninsured motorists benefits. The choice of law question also controls which state's substantive law will be used to judge Moore's allegations of bad faith by USAA that rise to the level of an independent tort against Moore.

We reject Moore's "overriding public policy" argument. *Boardman* explained that public policy considerations couldn't completely overwhelm fairness considerations, particularly when the litigant is a citizen of a foreign state and not a Mississippi resident. 470 So.2d at 1039. The state has no "substantial interest in the upholding of the public policy of this state [Mississippi] ... when the question is: who is an insured under a [Florida] insurance contract." *Id.* Mississippi simply has no connection to this lawsuit other than as the place of the accident. Thus, public policy in Mississippi does not alter application of Florida law to the case *sub judice*.

### B) Summary Judgment

Moore attempts to raise a number of factual questions with regard to Shine's insurance policy and USAA's alleged bad faith/independent tort perpetrated upon Moore. Our standard of review on a mo-

tion for summary judgment is governed by F.R.Civ.P. 56(c), which requires this Court to consider whether there is a genuine issue as to any material fact precluding entry of summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 267 (5th Cir.1984); *United States v. An Article of Drug,* 725 F.2d 976, 984 (5th Cir.1984). The evidence must be viewed in a light most favorable to appellant's position. *Russell v. Harrison,* 736 F.2d 283, 287 (5th Cir.1984). We have reviewed Moore's contentions carefully, but his position is without merit in the law. We rely heavily on the district court's well-reasoned opinion in this case.[4]

*"Stacking" insurance benefits*

[2] The district court considered Moore's contention that an insurance policy in Florida should be "stacked" to permit recovery. Florida has an "anti-stacking" statute, Fla.Stat. § 627.4132 (Supp.1976), which reads as follows:

> **Stacking of coverage prohibited.** If an insured or named insured is protected by any type of motor vehicle insurance policy for liability, uninsured motorists, personal injury protection, or any other coverage, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has in the vehicle involved in the accident. However, if none of the insured's or named insured's vehicle is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with applicable coverage. Coverage on any other vehicles shall not be added to or stacked upon that coverage. This section shall not apply to reduce the coverage available by reason of insurance policies insuring different named insureds.

In the case at bar, the only policy in dispute has one named insured, Francis Earl Shine. Therefore, the statutory exception to the stacking prohibition, considered by the Florida Supreme Court in *South Carolina Insurance Company v. Kokay,* 398 So.2d 1355 (Fla.1981), which allowed stacking as long as the policies have different named insureds, is inapplicable here. The provisions of Shine's insurance policy cannot be stacked.

Moore argues that, while the anti-stacking statute was in effect at the time of the accident, an amendment passed by the 1980 Florida Legislature affords him recovery. Chapter 80–364, Laws of Florida, effective October 1, 1980, added the following: "This section shall not apply to uninsured motorist coverage." Appellant contends that the amendment was curative,[5] and since it was put into effect prior to the filing of this action the court should give retroactive effect to the amendment rather than apply the original anti-stacking statute to the case at bar. Since we agree with the district court that the State of Florida has a greater interest in governing relations between a Florida plaintiff and a Texas defendant construing a Florida contract, the issue of the amendment's retroactivity must be viewed as it would be determined by a Florida court. *See Tideway Oil Programs, Inc. v. Serio,* 431 So.2d 454 (Miss. 1983).

Florida courts have already considered whether substantive rights were involved in the original anti-stacking statute. *Dewberry v. Auto-Owners Insurance Co.,* 363 So.2d 1077 (Fla.1978). The *Dewberry* Court held that the prohibition on stacking uninsured motorist coverage for accidents occurring on or after October 1, 1976, impeded substantive rights under contracts negotiated and signed before that date—substantive rights protected by Article I, § 10, of the Florida Constitution. *Dewberry,* 363 So.2d at 1079. In fact, the general rule is that a law is presumed to act prospectively in the absence of a clear legisla-

---

4. *Moore v. United Services Automobile Assn.,* Civil Case No. S84–0463(N) (S.D.Miss. Jan. 3, 1986) (memorandum opinion).

5. "Curative" statutes are designed to affect the past and are given retroactive application. "Amendatory" acts, on the other hand, create or abrogate claims for relief or substantive rights and are accorded prospective application. *Bell v. Isthmian Lines, Inc.,* 363 F.Supp. 156, 159 (M.D.Fla.1973); *In re Reilly,* 442 F.2d 26 (7th Cir.1971).

tive expression to the contrary. *Id.; Walker & LaBerge, Inc. v. Halligan,* 344 So.2d 239 (Fla.1977). In *Dewberry* the Florida Supreme Court found that the legislature intended a retroactive application of the original anti-stacking statute by its specific pronouncement that the act should take effect on October 1, 1976.

When the insured Shine negotiated his contract with USAA, on July 20, 1978, the Florida anti-stacking statute was in effect. The accident on January 27, 1979, giving rise to this claim also occurred within the effective period of the 1976 anti-stacking provision. We find no express legislative intent to make the amendment deleting uninsured motorist coverage from the anti-stacking statute retroactive instead of prospective; the plaintiff has failed to show the curative rather than amendatory nature of the Florida amendment. Retroactive application of the amendment is precluded by both the wording of the statute and Florida precedent. The law of Florida appears to be well established in *Dewberry.*

*Accord, Hausler v. State Farm Mutual Auto Ins. Co.,* 374 So.2d 1037 (2d DCA Fla.1979), (operative law at time insurance contract was negotiated and signed incorporated into agreement and controls rights and obligations of parties); *see also Metropolitan Property and Liability Ins. Co. v. Gray,* 446 So.2d 216 (5th DCA Fla.1984). Accordingly, we affirm the district court's decision granting summary judgment against the plaintiff's claim that he is due uninsured motorist coverage here.

### Direct action against insurer

▆▆▆▆ Moore attempts to bring a direct action against USAA as an insurer for liability benefits under Shine's policy.[6] The district court dismissed Moore's direct action against USAA, holding that Moore must first receive a judgment against Shine's estate for negligence before proceeding against the insurer.[7] The *lex fori* controls all matters pertaining to remedial rights in Mississippi. *McNeal v. Administrator of Estate of McNeal,* 254 So.2d 521, 525 (Miss.1971); *Cook v. State Farm Mu-*

---

6. Appellant argues that USAA is estopped from denying liability now because the settlement with Patricia Shine originally included both liability and uninsured motorist benefits, a settlement characterized as deceitful in this lawsuit. Judicial estoppel is designed to protect the integrity of the courts and the judicial process from inconsistent positions of the parties; it involves considerations of orderliness, regularity and expedition in sworn positions at litigation. *Parkerson v. Borst,* 264 F. 761, 767 (5th Cir.), cert. denied, 254 U.S. 634, 41 S.Ct. 8, 65 L.Ed. 449 (1920). *See Johnson Service Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir. 1973). Moore does not contend that USAA is estopped due to inconsistencies in USAA's position in the instant action; rather, he points to prior positions, taken mostly in negotiating settlements, which may be construed as inconsistent to the defendant's position in the case at bar. We note that two of the defendant's prior positions were never litigated—the purpose of settlements is, in fact, to avoid litigation.

We find little significance, therefore, in the defendant's purely internal and administrative act of coding Patricia Shine's settlement partly to the liability coverage. The plaintiff's characterization of USAA's motive in negotiating a settlement with Patricia Shine and the estate of Diane Shine is speculative and without foundation. *Moore offers no evidence in favor of* estoppel based on a sworn statement given to a

court in prior litigation. *See Ivor B. Clark Company of Texas, Inc. v. Southern Business and Industrial Development Co.,* 399 F.Supp. 824 (S.D.Miss.1974). Moore's contention that USAA is estopped because it claimed arbitration is also of no consequence. Estoppel cannot require an insurer to pay sums under a policy which exceed the amount of coverage.

The plaintiff's most serious contention for estoppel arises from USAA's defense position in prior litigation of the uninsured motorist coverage due the estate of Francis Shine. There, USAA argued that Shine was not only negligent, but that his negligence superseded the negligence of the uninsured motorist. However, the jury rejected USAA's position and awarded uninsured motorist benefits to Shine's estate. The majority view is that judicial estoppel does not apply unless the party has been successful in persuading a court to accept its position. *See Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir.1982). The district court properly failed to credit appellant's estoppel argument as one that could succeed as a matter of law.

7. In Civil Case No. S85–0160(R) a judgment was entered dismissing Orma Moore's action against the estate of Francis Shine. (S.D.Miss. June 30, 1986). The ruling by Judge Russell was based on the expiration of the four year and three month statute of limitations. Thus, if Moore is *to recover liability benefits at all, it is only by a* direct action against the insurer, USAA.

*tual Ins. Co.,* 241 Miss. 371, 128 So.2d 363 (1961). The right to maintain a direct action against an insurer based upon the negligence of its insured is considered a remedial right and is, therefore, governed by the law of the forum. *McNeal,* 254 So.2d at 525. Such an action is clearly barred by Mississippi law. *Goodin v. Gulf Coast Oil Co.,* 241 Miss. 862, 133 So.2d 623 (1961); *Cook v. State Farm Mutual Ins. Co.,* 241 Miss. 371, 128 So.2d 363 (1961). Even if Florida did recognize a direct action against an insurer, which is a doubtful proposition,[8] Mississippi law would not apply it. *See Pearson v. Globe Indemnity Co.,* 311 F.2d 517 (5th Cir.1962) (Mississippi law defines another state's [Louisiana's] direct action against insurer statute as procedural in nature and holds it does not operate extra-territorially).

■ Moore's alternative argument is that the Mississippi Supreme Court's adoption of the Mississippi Rules of Civil Procedure (1982), specifically Rule 18(b),[9] implicitly authorizes direct action suits. The district court found and we agree that Rule 18(b) Miss.R.Civ.P. is procedural and defers to substantive rights. In this action Moore did not attempt to join the insurer and insured; Moore sought only to sue the insurer instead of the negligent party. Moreover, Shine's insurance policy contained a "no action" clause which prohibited any insurance payments until the person or estate covered by the insurance policy was party to an adverse judgment. Estab-

lishing the liability of the insured is a condition precedent to any action against the insurer. 6 Wright & Miller, Federal Practice and Procedure § 1594 (1971). The right of an insurer in a "no action" clause of an insurance contract is substantive, so Rule 18(b) is not applicable in this case. We are especially hesitant to grant credence to the plaintiff's reading of the rule in light of the absence of such a construction by the courts of Mississippi.

*Fraud and breach of fiduciary duty*

■ We agree that summary judgment is appropriate in favor of USAA on Moore's claim of fraud and breach of fiduciary duty. Moore does not make out a prima facie case for an independent tort regardless of whether Florida law or Mississippi law controls.

It is well settled under both Florida and Mississippi law that punitive damages are awarded in a breach of contract action only where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as to constitute an independent tort.[10] *Wolfe v. Aetna Ins. Co.,* 436 So.2d 997 (5th DCA Fla.1983); *Aetna Life Ins. Co. v. Smith,* 345 So.2d 784 (4th DCA Fla.1977); *Saltmarsh v. Detroit Automobile Inter-Insurance Exchange,* 344 So.2d 862 (3rd DCA Fla.1977); *Standard Life Ins. Co. of Indiana v. Veal,* 354 So.2d 239 (Miss.1978); *Starkville Municipal Sepa-*

---

8. Although Moore asserts that Florida law would afford him this right, Florida decisions do not support this argument. *Bussey v. Shingleton,* 211 So.2d 593 (1st DCA Fla.1968), *aff'd* 223 So.2d 713 (Fla.1969), upon which appellant relies, held only that an injured party may sue an insurer as a co-defendant in an action against its insured for negligence. *See also Van Bibber v. Hartford Accident & Indemnity Ins. Co.,* 439 So.2d 880, 883 (Fla.1983); *Perry v. Fireman's Fund Ins. Co.,* 379 So.2d 429 (2nd DCA Fla.1980). Appellant cites no case, and we find none, allowing an action against an insurer in the absence of the insured as co-defendant.

9. Rule 18(b) reads:
   *Joinder of remedies.* Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion,

the two claims may be joined in a single action; but the court shall grant relief in that action *only in accordance with the relative substantive rights of the parties.* (emphasis added)

10. Thus, in order to recover punitive damages from an insurer in Mississippi, the insured must show that there was no arguable basis to deny the claim and prove: (1) that the insurer acted with malice; or (2) that the insurer acted with gross negligence or reckless disregard for the rights of others. *Aetna Casualty Co. v. Day,* 487 So.2d 830 (Miss.1986). Florida courts require a tort separate and distinct from a willful and flagrant breach of contract. *Safeco Insurance Co. of America v. Campbell,* 433 So.2d 25, 37 (2nd DCA Fla.1983).

*rate School District v. Continental Casualty Co.,* 772 F.2d 168 (5th Cir.1985).

The evidence here does not support the award of punitive damages or a finding of bad faith on the part of USAA. Mr. Jack Pane, an adjuster hired by USAA, contacted Moore and his attorney to ascertain the extent of Moore's injuries and obtain information about any possible claims. Even considered in the light most favorable to appellant, Moore did not respond or file medical bills [11], a claim report, or contact USAA until the day the suit was filed. It was certainly reasonable to believe that Moore was making no claim. Appellant's claim that USAA "hid" or "purposefully concealed" the benefits available under the insurance policy simply is not credible. Moore makes much of an affidavit by Robert Cross wherein Cross stated that USAA had no knowledge of Moore's whereabouts until suit was filed. In his deposition Cross admitted this statement was made without checking his notes from years before, and he voluntarily amended his affidavit to reflect the fact that USAA knew Moore's address and phone number. If this is not good faith, neither is it bad faith which supports allegations of fraud. Moore knew that USAA had contacted him right after the accident. Moore suffered no prejudice as a result of this single statement—it has not changed the course of these proceedings—and is insufficient to impute fraud to USAA's settlement actions in this case.

Once the suit was filed, Moore further contends that a fraud has been perpetrated by USAA's refusal to pay uninsured motorist or liability benefits. These allegations, though, merely beg the question. USAA clearly had an "arguable basis" to deny benefits to Moore: the $200,000 uninsured motorists benefits were exhausted and the statute of limitations for a proper suit involving both insured and insurer had passed. Moore is precluded as a matter of law from recovering under the policy. USAA's defense of denying recovery is completely plausible since the law does not require them to pay. Accordingly, the district court found no bad faith and entered summary judgment against Moore.

AFFIRMED.

---

11. Though Moore was contacted by USAA's adjuster, no medical bills were ever submitted to the insurer. Moore eventually had a knee operation in 1981. When USAA deposed Moore's physicians and received the medical bills for the first time, it treated the bills as a formal claim and promptly issued a check to Moore for $5,000, the maximum amount available under Shine's insurance policy. Even viewed in the light most favorable to Moore, USAA paid the full amount of coverage within a matter of days after receiving the bills, though USAA questioned whether the 1981 knee surgery was casually related to the accident. This does not bear out Moore's claim of deception or fraud.