**Judy Lynn YEAGER, Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY and Northern Insurance Company of New York, Defendants.**

**Civ. A. No. 9:92–1283–22.**

United States District Court, D. South Carolina, Beaufort Division.

July 29, 1994.

Albert Parker Barnes, Jr., Beaufort, SC, John E. Parker, Hampton, SC, for plaintiff.

Samuel Richard Clawson, Charleston, SC, R. Davis Howser, Columbia, SC, for defendant.

**ORDER**

CURRIE, District Judge.

This is an action for breach of contract and bad faith brought by a passenger in a motor vehicle accident against an uninsured motorist carrier, Maryland Casualty Company, and its associated company, Northern Insurance Company of New York (hereinafter "Northern"). Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter is presently before the court on the joint motion of the parties that this court answer a choice of law question.[1] The matter came on for hearing on April 20, 1994 and July 12, 1994. The court has reviewed the record in this matter, and considered argument of counsel. For reasons set forth below, the court concludes that the law of Georgia applies to this action.

**FACTS**

Defendant Northern Insurance issued a policy of automobile liability insurance in the State of Georgia to its named insured, Starnes. The policy provided uninsured and underinsured motorist coverage and personal income protection (PIP) coverage.

On March 17, 1990, Starnes was driving the insured vehicle with Judy Yeager as a passenger. They were involved in an accident with a vehicle driven by an intoxicated driver, Kirk, who was insured by State

1. The parties requested that this court certify the choice of law question and another question to the Supreme Court of South Carolina pursuant to Rule 228 of the South Carolina Rules of Appel- late Practice. The court denied the request, and ordered the parties to submit briefs on the choice of law question.

Farm. The accident occurred just across the South Carolina state line, in Beaufort County, as Plaintiff and Starnes travelled to Beaufort. Plaintiff and Starnes had intended to return to their Georgia homes at the conclusion of the trip.

Starnes and Plaintiff were, and still are, Georgia residents. Following the accident, Plaintiff was taken by ambulance to a hospital in Savannah. Once discharged, she returned to her Atlanta home. All medical treatment received by Plaintiff since the accident, currently in excess of $70,000, occurred outside South Carolina. Plaintiff suffered serious injuries, preventing her from returning to employment for one year after the accident.

Plaintiff claimed PIP benefits under Starnes' Northern Insurance policy for her medical expenses and other losses. She received $50,000 in PIP benefits.

Plaintiff brought a tort suit in the United States District Court for the District of South Carolina against Kirk, the at-fault motorist. Kirk had liability coverage with State Farm Mutual Automobile Insurance Company, with a policy limit of $25,000 per person, or $50,000 per accident. State Farm paid the estate of a passenger killed in Kirk's car $6,666, and paid $21,667 each to Starnes and Plaintiff. Plaintiff also served a copy of the pleadings in that case on Starnes' insurer, which potentially had excess coverage. Plaintiff's counsel in that case also forwarded all the medical bills and reports of treatment to Northern.

Starnes had uninsured[2] motorist coverage with Northern, with a policy limit of $250,000. Under Starnes's policy, Plaintiff was entitled to coverage by Northern for injuries resulting from another uninsured motorist's negligence, up to the limits of $250,000. While Plaintiff's suit against Kirk was pending, Plaintiff made a demand for $250,000, or in the alternative, for the policy limits minus the State Farm payment, on Northern.

Northern offered $225,000, which is $3,333 less than the lesser, alternative demand made by Plaintiff. Plaintiff rejected the offer.

Shortly before Yeager's trial in South Carolina, she entered into a covenant not to execute with Kirk, and State Farm, his liability carrier. She proceeded to trial and recovered a verdict of $600,000. After recovering the $600,000 verdict against Kirk, Plaintiff's attorney wrote Northern on March 11, 1992, demanding payment of the excess coverage, but remaining vague as to the precise amount demanded. Northern did not respond.

On May 5, 1992, Plaintiff filed the present suit charging Northern with breach of contract and bad faith, and demanding the full amount of the $600,000 verdict from the suit against Kirk, as well as punitive and consequential damages for emotional distress and mental anguish. Plaintiff's complaint was later amended to include a claim under Georgia statutory law. Defendants respond that Plaintiff's amended complaint for bad faith fails to state a claim because Plaintiff was not a policyholder of the defendants. Defendants maintain that any covenant of good faith and fair dealing for first party insurance coverage owed by an insurer requires a contractual relationship between a policyholder and an insurer, and thus, Plaintiff may not pursue this claim.

In late July or early August 1992, Northern paid Plaintiff $228,333 as "Partial Satisfaction of Judgment" in the claim for uninsured benefits.

## DISCUSSION

The threshold issue in this case is whether Georgia or South Carolina law applies to this claim for bad faith. The specific question is what law applies to a bad faith and breach of contract claim brought against an insurer by

2. Although under South Carolina law the coverage at issue in this case would be termed "underinsured" or "UIM" benefits, under Georgia law and the Georgia policy under which Plaintiff claims, an "uninsured motorist" is defined to include any at-fault motorist, such as Kirk, whose policy limits are less than the injured party's policy limits. Pltf's Brief on Choice of Law Issue at 4. The phrase "uninsured" coverage will be used in this order to refer to the instant claim because the claim is brought on a Georgia policy.

a nonpolicyholder "insured," [3] who is a Georgia resident, for an alleged failure to pay uninsured motorist benefits under a contract of automobile liability insurance issued in Georgia to a Georgia named insured, where the underlying motor vehicle accident, subsequent lawsuit, and negotiations for the settlement of the suit occurred in South Carolina.

Defendants argue that the obligations to pay uninsured benefits under the Georgia policy, and any claims for bad faith arising therefrom, should be governed by Georgia law.[4] Defendants maintain that the court should apply the rule of *lex loci contractu* in a choice of law dispute regarding the validity, interpretation, effect, and liability under a contract of insurance. Defendants further point to South Carolina authority suggesting that a cause of action for bad faith is one premised on contract, citing *Bartlett v. Nationwide Mutual Fire Ins. Co.*, 290 S.C. 154, 157–58, 348 S.E.2d 530, 532 (Ct.App.1986) (Bell, J.) ("regard it as an action in contract on an implied covenant of good faith and fair dealing ... *Nichols* created a new remedy for the violation of rights arising in contract, not a new substantive right in tort").

Plaintiff argues that the action for bad faith is one in tort. Thus, Plaintiff contends the rule *lex loci delicto* applies and, under South Carolina choice of law principles, if the complaint states a cause of action in tort, South Carolina substantive law applies where the cause of action and injury arose in South Carolina. Both parties admit that no reported South Carolina decision addresses choice of law principles in a bad faith action.

The well-settled principle is that a federal court, sitting in diversity, must apply the law of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see generally* 19 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4501 (1982). Accordingly, South Carolina choice of law principles must be applied to resolve any conflict of laws dispute arising out of the bad faith claim.

South Carolina's choice of law principles generally have turned on whether the principal claim is characterized as one in contract or tort. Questions under insurance contracts have usually been resolved under the rule of *lex loci contractu*.[5] For example, in *Ratliff v. Coastal Plain Life Ins. Co.*, 270 S.C. 373, 242 S.E.2d 424 (1978), a North Carolina insured purchased a life insurance policy six months before his death. The agent from whom the policy was purchased was in North Carolina. After the insured's death, rights under the policy were assigned to a South Carolina resident, the plaintiff. When the insurer refused payment on the basis that the policy was secured by fraud, the court found North Carolina, the place of the contract issuance, applied where the insured was a North Carolina resident, applied for insurance there, died there, and had his estate

---

**3.** Defendants admit that Plaintiff meets the definition of an "insured" under the uninsured motorist provisions of the Georgia automobile liability policy. *See* August 17, 1993, letter of Howser to Court.

**4.** During the telephone conference on July 12, 1994, the court questioned counsel concerning the difference in availability of remedy under South Carolina and Georgia law. Counsel admit that the existence of such a claim is unclear under South Carolina law because no reported opinion has squarely addressed this issue. Counsel for Defendants admits, however, that Plaintiff would probably have a bad faith claim under Georgia law because she is an "insured" under the policy, but Defendants maintain that her maximum recovery under Georgia law would be established pursuant to Ga.Code Ann. § 33–7–11(J), and would be not more than 25% "of the

recovery and all reasonable attorney fees for the prosecution of the case under this Code section." Ga.Code Ann. § 33–7–11(J). Plaintiff takes the position that if Georgia law applies, Plaintiff's recovery would be 25% of the $600,000 verdict. Plaintiff's counsel still argues, however, that South Carolina law should apply and would allow Plaintiff a more generous recovery than Georgia law. *See Nichols v. State Farm Mut. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983).

**5.** Although the court is aware that S.C.Code Ann. § 38–61–10 (Law.Co-op.1976) expands the application of South Carolina law to "contracts of insurance on property, lives, or interests in this State," the court concludes that the foregoing section has no application to the present case because there are no "interests" in South Carolina.

probated there. Similarly, in *Long v. Adams*, 280 S.C. 401, 312 S.E.2d 262 (Ct. App.1984), the court found that North Carolina law applied to a garage liability insurance policy that covered a vehicle involved in a South Carolina motor vehicle accident. A North Carolina automobile dealer had loaned the car to the defendant, a South Carolina resident. Even though the accident occurred in South Carolina, involved a South Carolina resident, and an exclusion in the policy would have been void under South Carolina law, the court refused to apply South Carolina law. The court reasoned that the policy was written in North Carolina, was delivered there, and named as insured a North Carolina corporation with its principal place of business there.

In tort cases the rule of *lex loci delicto* has been applied, *see Dawkins v. State*, 306 S.C. 391, 412 S.E.2d 407 (1991). If the bad faith claim is classified as a tort, the law of South Carolina would apply because the accident and ensuing negotiations resulting in the alleged bad faith occurred in South Carolina.

Although South Carolina appellate courts have not squarely answered whether bad faith is a contract or tort action, the more recent cases of *Crossley v. State Farm Mutual Ins. Co.*, 307 S.C. 354, 415 S.E.2d 393 (1992), and *Bartlett v. Nationwide Mutual Fire Ins. Co.*, 290 S.C. 154, 348 S.E.2d 530 (Ct.App.1986), suggest that the action is basically one in contract. Accordingly, in the present case, Georgia law, as the law of the place in which the contract was entered, and where the contracting parties reside, would apply.

The conclusion that Georgia law applies to this case is consistent with cases from other jurisdictions that have addressed the choice of law issue in a bad faith context. In *Simpson v. Motorists Mutual Ins. Co.*, 494 F.2d 850 (7th Cir.1974), *cert. denied*, 419 U.S. 901, 95 S.Ct. 184, 42 L.Ed.2d 147 (1974), which was cited by the *Long* court with approval, the Seventh Circuit found that Ohio law applied to a bad faith insurance dispute where the plaintiff's decedent was killed in an automobile accident caused by an Ohio resident in Indiana. The court stated, "[t]he contract of insurance here, entered into in the State of Ohio, provided coverage to an Ohio resident for a vehicle registered in

Ohio.... Only the underlying tort occurred outside of Ohio." *Id.* at 853. Similarly, in *American Family Life Assurance Co. v. United States Fire Co.*, 885 F.2d 826 (11th Cir.1989), the court concluded that the place of the making of the contract controls choice of law in a bad faith action. In another action brought by a passenger injured in an accident in Mississippi, who sued the driver's carrier for bad faith, *Moore v. United Services Auto Ass'n*, 808 F.2d 1147 (5th Cir. 1987), the court ruled that Florida law applied. That was because the driver-insured entered into the contract while a Florida resident, both the plaintiff and the driver had been Florida residents, and all cars were registered in Florida. The court rejected the contention that the mere occurrence of the accident in Mississippi brought the claim under Mississippi law, and concluded, "Florida has by far the most significant relationship to the parties and issues involved in this litigation." *Id.* at 1151.

In the instant case it is obvious that the state of Georgia has the most significant and long-term relationship to the parties and issues here. In fact, no South Carolina contacts exist with respect to the contract itself. Starnes' policy was applied for, written, issued, and paid for in Georgia. All policy forms, amendments, and premium notices were sent to the insured in Georgia. In fact, Plaintiff has already availed herself of certain contract benefits of the Georgia policy by receiving PIP benefits under Georgia law. Even as to the non-contract contacts, most of the pertinent events occurred in Georgia, e.g., all medical treatment except the on-the-scene treatment of Plaintiff occurred in Georgia, and any mental, physical and financial injuries Plaintiff allegedly sustained from the bad faith would have occurred in Georgia. The mere fact that the accident and resulting lawsuit occurred here is insufficient to trigger the application of South Carolina law to Plaintiff's bad faith claim.

IT IS THEREFORE ORDERED THAT Georgia law applies to Plaintiff's bad faith cause of action.