363 So.2d 1077 (1978)
William C. DEWBERRY, Jr., As Administrator of the Estate of Patrick Joseph Dewberry, Deceased, and As Administrator of the Estate of Thomas Michael Dewberry, Deceased, and William C. Dewberry, Jr., Individually, Appellants,
v.
AUTO-OWNERS INSURANCE COMPANY, Appellee.
No. 52461.
Supreme Court of Florida.
September 7, 1978.
Rehearing Denied November 28, 1978.
*1078 Fredrick G. Levin, of Levin, Warfield, Middlebrooks, Mabie, Rosenbloum & Magie, P.A., Pensacola, for appellants.
William H. Clark, Jr., of Clark, Partington, Hart & Hart, Pensacola, for appellee.
SUNDBERG, Justice.
We entertain this appeal from the Circuit Court for Escambia County, Florida, because the final judgment of that court passed initially and directly on the validity of Section 627.4132, Florida Statutes (Supp. 1976).[1] Jurisdiction vests in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution.
The facts are not in dispute. On August 3, 1976, the appellant and named insured, William C. Dewberry, Jr., renewed his automobile insurance with the defendant/appellee. The policy included uninsured motorist coverage on two vehicles, each vehicle carrying uninsured motorist coverage in the amount of $100,000 for injury or death of one person, and $300,000 for each occurrence. In addition to this uninsured motorist coverage, the named insured purchased medical payments coverage on each vehicle in the amount of $2,000 and no-fault coverage (personal injury protection) of $5,000. Included as insureds for the aforementioned coverages were the named insured's two sons, Patrick Joseph Dewberry and Thomas Michael Dewberry, who were insureds because they were residents of the named insured's household.
On December 11, 1976, Patrick and Thomas Dewberry died as a result of injuries sustained when an automobile owned and operated by George Lowell was involved in a one-car accident. At the time of the accident, George Lowell was insured under a policy of automobile liability insurance issued by United States Fidelity and Guaranty Company providing for policy limits of $15,000 for injuries and death sustained by one person, and $30,000 for injuries and death sustained by all persons in a total accidental occurrence.
Following the accident, United States Fidelity & Guaranty Company tendered $15,000 for the death of Patrick and $15,000 for the death of Thomas, which represented the policy limits. The named insured then made a claim for payment of funeral bills and medical expenses for each deceased child from Auto-Owners Insurance Company under the medical payments and no-fault coverages, which Auto-Owners paid.
The insured then filed suit for declaratory judgment alleging that he had access to $200,000 uninsured motorist coverage for the death of each child, and alleging that *1079 the uninsured motorist coverage is excess over the liability coverage of the liability carrier of Lowell. The insured alleged that he was entitled to "stack" the coverages applicable to each of the two vehicles for the claim of each decedent.
Prior to October 1, 1976, uninsured motorist coverage would "stack," which means that the appellant would have $200,000 in uninsured motorist coverage for the death of each child ($100,000 uninsured motorist coverage times two vehicles). On October 1, 1976, Section 627.4132, Florida Statutes (Supp. 1976), became law and it stated that uninsured motorist coverage will no longer stack for accidents occurring on or after October 1, 1976. Appellant argued the passage of Section 627.4132, Florida Statutes (Supp. 1976), could not affect his insurance contract with appellee, which was entered into prior to October 1, 1976, without violating Article I, Section 10, Florida Constitution. After both parties moved for summary judgment, the trial court held adversely to appellant, finding that the statute did have retroactive effect, that the statute was constitutional, and consequently, that the insured may not stack the coverages applicable to the two insured motor vehicles. Finally, the appellant contended that Section 627.727, Florida Statutes (1975), required uninsured motorist coverage to be "excess over" any liability coverage that a third party has. The trial court again held adversely to appellant, finding that the $15,000 liability coverage of Lowell, tendered to the insured, operated to reduce the uninsured motorist coverage from $100,000 to $85,000.
Renewing the arguments he made in the trial court, appellant posits that (1) Section 627.4132, Florida Statutes (Supp. 1976), is unconstitutional because the statute abridges the right of two private parties to contract freely, (2) the statute violates Article I, Section 10, Florida Constitution, because it impairs the obligation of an insurance contract entered into prior to the effective date of the statute, and (3) the trial court erred in holding that Section 627.727(1), Florida Statutes (1975), requires the insured to set off the amount recoverable from the third-party tort-feasor's insurance carrier against the total amount of uninsured motorist coverage available to him. In view of our disposition of appellant's second argument, it is unnecessary for us to pass upon the facial constitutionality of Section 627.4132, Florida Statutes (Supp. 1976), and we decline to do so. Singletary v. State, 322 So.2d 551 (Fla. 1975); Peoples v. State, 287 So.2d 63 (Fla. 1973); Williston Highlands Development Corp. v. Hogue, 277 So.2d 260 (Fla. 1973); Walsingham v. State, 250 So.2d 857 (Fla. 1971); Mounier v. State, 178 So.2d 714 (Fla. 1965).
With regard to appellant's contention that the insurance contract was impaired in contravention of Article I, Section 10, Florida Constitution, we agree. Appellant renewed his uninsured motorist coverage in August, 1976. On that date, uninsured motorist coverage would stack. The Governor signed Chapter 76-266 (Section 627.4132) into law on June 27, 1976, to apply to all claims arising out of accidents on or after October 1, 1976. In the instant case, the accident occurred on December 11, 1976. While it is true that a law is presumed to operate prospectively in the absence of clear legislative expression to the contrary, Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977), it is equally clear that the legislature intended a retroactive application of this statute by its pronouncement that the act shall take effect on October 1, 1976.[2] As of that date whether the insured had entered previously into an insurance contract for uninsured motorist coverage or not, stacking was no longer permitted. Thus, the effect upon appellant of the statute's *1080 passage was to reduce his uninsured motorist coverage from $200,000 to $100,000 albeit he paid premiums for the increased coverage. It is axiomatic that subsequent legislation which diminishes the value of a contract is repugnant to our Constitution. As this Court stated in Pinellas County v. Banks, 154 Fla. 582, 19 So.2d 1, at 3 (1944):
Any conduct on the part of the legislature that detracts in any way from the value of the contract is inhibited by the Constitution. State of Louisiana v. City of New Orleans, 102 U.S. 203, 26 L.Ed. 132; Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793.
See also Yamaha Parts Distributors, Inc. v. Ehrman, 316 So.2d 557 (Fla. 1975); Rorick v. Board of Commissioners of Everglades Drainage District, 57 F.2d 1048 (1932); Moore v. Branch, 5 F. Supp. 1011 (1934). Accordingly, appellant's constitutional right guaranteed by Article I, Section 10, Florida Constitution, has been infringed.
Appellee contends that in view of the fact that the insured renewed his insurance policy after the Governor had signed Chapter 76-266 into law, he was on notice that stacking would not be permitted after October 1, 1976. Consequently, appellee concludes that appellant's policy was not altered retroactively without notice to him at the time the contract was made. As support for this proposition, appellee relies upon Nationwide Mutual Insurance Co. v. Bryar, 349 So.2d 1221 (Fla. 2d DCA 1977), wherein on facts similar to the instant case, the District Court of Appeal, Second District, found this argument persuasive. We are not so persuaded. The citizens of this State cannot be charged reasonably with notice of the consequences of impending legislation before the effective date of that legislation,[3] for it is generally accepted that a statute speaks from the time it goes into effect. In re Raimondi, 126 F. Supp. 390 (D.C.Cal. 1954); Combs v. Cook, 238 Ind. 392, 151 N.E.2d 144 (1958); Gianforte v. Crucible Steel Co. of America, 25 N.J. Super. 183, 95 A.2d 632 (1953); County School Board of Fairfax County v. Town of Herndon, 194 Va. 810, 75 S.E.2d 474 (1953). Today we reaffirm this general rule and find that appellant was placed on notice of the effectiveness of Section 627.4132, Florida Statutes (Supp. 1976), only as of October 1, 1976.
Appellant's other point on appeal requires this Court to construe the meaning of certain language found in Section 627.727(1), Florida Statutes (1975). That statute reads in pertinent part that uninsured motorist coverage.
shall be excess over but shall not duplicate the benefits available to an insured under any workmen's compensation law, disability benefits law, or any similar law; under any automobile liability or automobile medical expense coverages; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.
It is appellant's position that the words "excess over" should be interpreted literally to mean "added to" and not "set off." Because we must assume that the legislature knew what it was doing when it used the words "excess over," appellant posits that appellee is not empowered to set off the $15,000 liability coverage of Lowell from appellant's uninsured motorist coverage. Thus, if appellant "stacks" his uninsured motorist coverage in the case sub judice, he claims entitlement to $200,000 as opposed to $185,000.
Appellee asserts that the insurance policy itself, case law, and policy mandate that an uninsured motorist carrier be entitled to credit for the liability coverage of a third-party tort-feasor. In addition to citing a provision of the policy which appellee contends provides for a credit and numerous decisions of the District Courts of *1081 Appeal which it claims recognize that payments from the liability insurers of third-party tort-feasors operate to reduce the available uninsured motorist coverage,[4] appellee submits that appellant's position runs contrary to the basic theory of uninsured motorist coverage.[5] That theory is that uninsured motorist coverage is meant to compensate the plaintiff for a deficiency in the tort-feasor's personal liability insurance coverage. We agree. The statute was only intended to allow the insured the same recovery which would have been available to him had the tort-feasor been insured to the same extent as the insured himself. Cf. Salas v. Liberty Mutual Fire Insurance Co., 272 So.2d 1 (Fla. 1972); Lee v. State Farm Mutual Auto Insurance Co., 339 So.2d 670 (Fla. 2d DCA 1976); State Farm Mutual Auto Insurance Co. v. Anderson, supra; Government Employees Insurance Co. v. Graff, 327 So.2d 88 (Fla. 1st DCA 1976); Biondino v. Southern Farm Bureau Casualty Insurance Co., 319 So.2d 152 (Fla. 2d DCA 1975). It could not have been intended to place the insured who is injured by an underinsured motorist in a better position than one who is harmed by a motorist having the same insurance as the insured. Furthermore, were we unpersuaded that policy considerations mandate such a result, we would still adopt appellee's position on this point because the language of the statute, read in its entirety, suggests that we do so. The statute states that uninsured (or underinsured) motorist coverage "shall be excess over but shall not duplicate benefits available to an insured ... under any automobile liability ... coverages ... from the owner or operator of the uninsured motorist vehicle." (Emphasis supplied). Here, $15,000 of liability coverage of the tort-feasor was "available to" and tendered to the insured. To accept appellant's contention would require duplicating the benefits the appellant has received from the tort-feasor. Were benefits from the tort-feasor's liability coverage not available to the appellant, e.g., where the benefits under the tort-feasor's policy have been exhausted by payment of claims to persons other than the insured, then the appellant would be entitled to "excess over" the tort-feasor's liability coverage benefits, and the uninsured motorist coverage would then not duplicate the benefits received from the tort-feasor's coverage. Similarly, where the benefits under the tort-feasor's policy have been partially exhausted by payment of claims to persons other than the insured, then the insured is entitled to "excess over" the amount received from the tort-feasor's carrier up to the limits of the claim or the policy, whichever is less. See State Farm Mutual Automobile Insurance Co. v. Diem, 358 So.2d 39 (Fla. 3d DCA 1978).[6] Thus, we find that the $15,000 liability coverage of the tort-feasor which was tendered to the insured reduced what the appellant could receive from his uninsured motorist carrier by that amount.
Accordingly, that part of the trial court's judgment finding that the application of *1082 Section 627.4132, Florida Statutes (Supp. 1976), to appellant's insurance contract did not violate Article I, Section 10, Florida Constitution, is reversed. That part of the judgment finding that the uninsured motorist carrier is entitled to credit on the uninsured motorist coverage for the liability insurance coverage of the tort-feasor that has been tendered to the insured is affirmed. This cause is remanded for proceedings not inconsistent with the views expressed herein.
It is so ordered.
ENGLAND, C.J., and BOYD, OVERTON, HATCHETT and ALDERMAN, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] § 627.4132, Fla. Stat. (Supp. 1976), reads:

"Stacking of coverages prohibited.  If an insured or named insured is protected by any type of motor vehicle insurance policy for liability, uninsured motorist, personal injury protection, or any other coverage, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. However, if none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with applicable coverage. Coverage on any other vehicles shall not be added to or stacked upon that coverage. This section shall not apply to reduce the coverage available by reason of insurance policies insuring different named insureds."
[2] Ch. 76-266, § 10, Laws of Florida (§ 627.4132) was passed on June 4, 1976. The last section of that bill reads:

"Section 16. This act shall take effect October 1, 1976, and shall apply to all claims arising out of accidents occurring on or after said date."
[3] Sammis v. Bennett, 32 Fla. 458, 14 So. 90 (1893). See also State ex rel. Stuart Daily News, Inc. v. Lee, 120 Fla. 858, 163 So. 135 (1935); 30 Fla.Jur., Statutes, § 147 (1974).
[4] State Farm Mutual Automobile Insurance Co. v. White, 330 So.2d 858 (Fla. 2d DCA 1976); Govt. Employees Ins. Co. v. Farmer, 330 So.2d 236 (Fla. 1st DCA 1976); State Farm Mutual Auto Ins. Co. v. Anderson, 332 So.2d 623 (Fla. 4th DCA 1976); Govt. Employees Ins. Co. v. Butt, 296 So.2d 599 (Fla. 3d DCA 1974); Sellers v. Govt. Employees Ins. Co., 214 So.2d 879 (Fla. 1st DCA 1968). We note that none of these cases expressly construe the meaning of "excess over" as used in § 627.727(1), Fla. Stat. (1975). However, a set off for the tort-feasor's coverage was assumed.
[5] § 627.727(3), Fla. Stat. (1973), changed the definition of uninsured motor vehicle to include not only a vehicle which had no liability insurance, but in addition, defined the words "uninsured motor vehicle" to include an insured motor vehicle when the liability insurer thereof "has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under uninsured motorists coverage applicable to the injured person." Thus, while the tort-feasor in the case sub judice had bodily injury liability coverage with limits less than the policies of appellant and therefore was "underinsured," we have referred to the appellant's coverage as uninsured motorist coverage.
[6] To the extent that Jones v. Travelers Indemnity Co. of Rhode Island, 357 So.2d 231 (Fla. 4th DCA 1978), holds to the contrary it is hereby disapproved.