396 So.2d 836 (1981)
KENILWORTH INSURANCE COMPANY, an Insurance Company Authorized to Do Business in the State of Florida, and Dale A. Miller, Appellants and Cross-Appellees,
v.
Teresa I. DRAKE and State Farm Fire and Casualty Insurance Company, an Insurance Company Authorized to Do Business in the State of Florida, Appellees, Cross-Appellants and Cross-Appellees.
No. 79-1373.
District Court of Appeal of Florida, Second District.
April 10, 1981.
*837 A.J. Melkus of Boswell, Boswell & Conner, Bartow, for appellants and cross-appellees Kenilworth Insurance/Miller.
Lee S. Damsker of Gordon & Maney, P.A., Tampa, and Clinton A. Curtis of Curtis & Lilly, Lakeland, for appellee and cross-appellant Drake.
Arthur C. Fulmer, of Lane, Massey, Trohn, Clarke, Bertrand & Smith, P.A., Lakeland, for appellee and cross-appellant State Farm.
OTT, Judge.
Teresa I. Drake (hereinafter appellee) was injured in 1977 while riding as a passenger in a vehicle owned and operated by Dale A. Miller (hereinafter appellant) when it collided with a vehicle owned and operated by one Wells, who was uninsured. Appellee's own insurer, State Farm, provided her with $25,000 in uninsured/underinsured motorist coverage (UMC) and $5,000 in personal injury protection (PIP). Appellant carried $15,000 in liability coverage and $15,000 UMC with Kenilworth under a policy that extended protection to passengers in the vehicle, as additional insureds. However, the Kenilworth policy expressly provided that any payments to a claimant under the liability coverage would reduce any UMC that might be available to that claimant as an insured under the policy.
Appellee filed an action in circuit court for a declaration of (1) her total UM coverage under both policies, and (2) the proportionate liability of the two carriers, whom she named as defendants. She also named appellant as a defendant, but alleged that the accident was caused by the negligence of Wells, who was not included as a party to the suit. The complaint alleged a controversy with the two insurance companies as to whether appellee was entitled to recover the combined UMC benefits, as she contended, or only the larger coverage ($25,000) provided under her own policy, as contended by both carriers. Appellee requested *838 the circuit court to take jurisdiction and adjudicate liability, damages and all other matters necessary to do full justice and completely resolve all issues in one proceeding. As to the second issue specified in the complaint, the two insurance companies stipulated that they would pay any judgment in proportion to their respective UM coverages. That is, State Farm agreed to pay 25/40 and Kenilworth agreed to pay 15/40.
The insurance companies objected to the maintenance of the suit, claiming that the policy provisions for arbitration were mandatory and binding. Their motions to dismiss were denied and State Farm cross-claimed against appellant and Kenilworth for a determination of whether appellant's negligence caused or contributed to the accident. A jury was impaneled to decide three questions: (1) the total damages of appellee; (2) the percentage of negligence, if any, attributable to appellant in the accident in question; (3) the percentage of negligence, if any, attributable to Wells (the absent third party tortfeasor). The special advisory verdict returned by the jury assessed appellee's total damages at $45,000 and apportioned negligence at 60% on the part of Wells and 40% on the part of appellant.
Appellee promptly moved the court to amend her pleadings to conform to proof (and the special verdict) by including an allegation of negligence on the part of appellant. The court denied her motion and also denied, without prejudice, State Farm's cross-claim. Judgment was then entered in favor of appellee for the full amount of the UMC afforded by both policies ($40,000), less $5,000 in PIP already paid by State Farm, plus $2,500 attorneys' fees and $2,212 court costs. The insurance companies were ordered to pay the total judgment $39,712, in the proportions specified by their stipulation.
No one appealed from the denial of the cross-claim, but everyone has appealed from the judgment: appellee says that the $5,000 PIP benefits should not have been credited against the UMC and that her motion to amend to conform to proof after the advisory verdict was rendered should have been granted; appellant and Kenilworth claim (and State Farm agrees) that there was no justiciable controversy and therefore the case should have gone to arbitration, and that it was error for the court to "stack" the UMC provided by their two policies; State Farm argues that the $5,000 in PIP benefits it has already paid appellee should be set off against only its share of the liability for UMC. State Farm also claims a $15,000 credit for appellant's liability insurance with Kenilworth.
We affirm the judgment, but due in part to the peculiar facts of this case, and in part to the scarcity of reported precedent, we deem it advisable to explain our reasoning.

I.
Arbitration. Policy provisions for arbitration are binding insofar as they require referral to an arbitration panel of such issues as liability and damages. Sun Insurance Office, Ltd. v. Phillips, 230 So.2d 17 (Fla. 2d DCA 1970). Questions pertaining to the coverage provided by a policy, however, must be adjudicated by the courts. Midwest Mutual v. Santiesteban, 287 So.2d 665, 667[5] (Fla. 1974). Further, once a proper case for declaratory relief has been instituted, a court can and should adjudicate the entire controversy, so as to avoid multiplicity of suits. Travelers Insurance Co. v. Wilson, 371 So.2d 145, 147[1] (Fla. 3d DCA 1979). The court below did not err in denying the motions to dismiss. The insurance companies not only argued the multiple questions of coverage in that court, they continued to do so here. In doing so, they traversed their assertion that there was no justiciable issue.

II.
Stacking. The trial court properly declared that the combined UMC provided by the two insurance policies was available to appellee. "Stacking," now prohibited by section 627.4132, Florida Statutes, occurs when an owner of several vehicles seeks recourse to the aggregate coverage afforded *839 by separate policies on each of those vehicles. Where, as here, vehicles are separately owned and covered by separate policies issued to separate insureds, the reasons for the rule (and thus the rule) against "stacking" vanish. Cox v. State Farm Mutual, 378 So.2d 330, 333 (Fla. 2d DCA 1980); Stephan v. United States Fidelity and Guaranty Co. and State Farm Mutual Automobile Insurance Co., 384 So.2d 691 (Fla. 2d DCA 1980).

III.
Credits Against UMC. The purpose of UMC is to provide those so insured with a fund from which they can be compensated for injuries sustained in automobile accidents, just as though the tortfeasor had carried that much liability insurance. Dewberry v. Auto-Owners Insurance Co., 363 So.2d 1077, 1081[8] (Fla. 1978). The coverage available to the insured is not affected by the fact that there may be more than one tortfeasor involved. U.S. Fidelity and Guaranty Co. v. Timon, 379 So.2d 113 (Fla. 1st DCA 1979). Thus, appellee, was covered by UM insurance in the total sum of $40,000.[1] However, the language of the statute (section 627.727, Florida Statutes (1975), as amended by ch. 266, Laws of Fla. (1976))[2] is somewhat ambiguous, which has caused widespread controversy. When this accident occurred on April 28, 1977, subsection (1) of the statute (as amended) read, in pertinent part:
The coverage provided under this section shall be excess over but shall not duplicate the benefits available to an insured under any workmen's compensation law, personal injury protection benefits, disability benefits law, or any similar law; under any automobile liability or automobile medical expense coverages; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.[3]
The obvious question is whether the enumerated benefits are a credit against UM insurance, or whether the UM insurance covers those damages which are either over and above or separate and distinct from those damages defrayed by the particular collateral benefits.[4] Our state supreme court chose the first of those alternatives, in a case involving one of the collateral sources enumerated in the statute, i.e., the tortfeasor's liability insurance, and ruled that the language in question provides a credit against UM insurance to the extent that such collateral benefits are available to the insured. Dewberry, supra, 363 So.2d at 1081.
Accordingly, we hold that the $5,000 in PIP benefits received by appellee constitutes a credit against the UM insurance available to her. Carter v. Government Employees Insurance Co., 377 So.2d 242 (Fla. 1st DCA 1979); Fidelity and Casualty Co. of New York v. Moreno, 350 So.2d 38 (Fla. 3d DCA 1977); Florida Farm Bureau Casualty Co. v. Andrews, 369 So.2d 346 *840 (Fla. 4th DCA 1978), cert. denied, 381 So.2d 764 (Fla. 1980). We are aware, of course, that our sister court in the fifth district disagreed with that rule in State Farm Mutual Automobile Insurance Co. v. Bergman, 387 So.2d 494 (Fla. 5th DCA 1980), and that the fourth district has receded from Florida Farm Bureau in Lackore v. Hartford Accident and Indemnity Co., 390 So.2d 486 (Fla. 4th DCA 1980). It seems to us, however, that Dewberry, supra, cannot be construed so narrowly as to be applicable to only such recovery as may be made from the tortfeasor or his liability carrier, and we reject, for the reasons set forth by the first district in Carter v. Government Employees Insurance Co., 377 So.2d 242 (Fla. 1st DCA 1979), cert. denied, 389 So.2d 1108 (Fla. 1980), the Bergman theory that the 1979 amendment (see n. 4) should be given retroactive effect.
Whatever the effect Dewberry may have on PIP benefits, there can be no denial that it firmly established that any liability insurance carried by either or both of the tortfeasors must be credited against UMC. Jones v. Travelers Indemnity Co. of Rhode Island, 368 So.2d 1289 (Fla. 1979); Dickey v. Grange Mutual, 370 So.2d 1234 (Fla. 2d DCA 1979). In the instant case, however, the difficult question lies at the threshold: has there been a binding determination that appellant was at least partially responsible for the accident? Normally, that question is quite critical to an injured claimant because if offsetting credit against UMC is given for the liability insurance of one who may ultimately be found blameless for the accident, the claimant obviously could be deprived of compensation to that extent.
Here, appellee's complaint did not specifically allege the negligence of appellant. However, that is not determinative, because State Farm (appellee's carrier) did raise that issue in its cross-claim and, at the request of both insurers, the jury resolved that question. The problem is that, having obtained that information from the jury, the court failed to use it. Instead the cross-claim was denied without prejudice (presumably to State Farm asserting it in a subsequent action or arbitration proceeding), and that ruling has not been challenged.
We are puzzled by the refusal of the court to include in the declaratory judgment a specific ruling that appellant and Wells were joint tortfeasors. The question of appellant's responsibility could have been adjudicated with finality. There was no necessity, of course, for making a specific allocation of blame between appellant and Wells. Appellee would not be affected because the liability of the tortfeasors would be joint and several, and thus appellant's entire liability coverage would have been made "available" to appellee had the trial court simply determined that appellant was jointly responsible for her damages, inasmuch as they exceeded his liability coverage. Nor, under the particular facts of this case, was the apportionment of negligence important or even meaningful to the insurers. Had all the parties been before the court, and had the issue of contribution between joint tortfeasors been properly presented, the apportionment could have been significant in terms of their liability inter se, and could have affected the insurers' subrogation rights. Here, however, Wells was not a party to the proceeding and thus the apportionment was meaningless because it was not binding upon him.
Nevertheless, we are unable to hold that the trial court erred in refusing to adjudicate the issue raised by the cross-claim. Our hands are tied by the fact that no one appealed from that order. True, appellee has challenged the refusal of the court to let her amend her complaint to conform to proof that appellant and Wells were both negligent, but that is a different matter and we think that as to her such ruling was not prejudicial. The insurance money available to her would not increase if appellant's negligence were established because, as already noted, recovery from his liability insurance would merely decrease the UMC available to her. Conversely, the failure to establish appellant's liability cannot decrease the insurance money appellee will receive. We think the court should have permitted her amendment, since the issue was fully tried and resolved, but the *841 denial of her motion was harmless insofar as she is concerned.[5]
In resolving the final question before us we are forced from the shelter of precedent into uncharted seas. When more than one insurer furnishes UMC, which one gets the credit for any collateral benefits received by or available to the insureds? No appellate court in Florida seems to have considered that problem,[6] and the statute provides no answer. It merely directs that various types of collateral benefits are not to be "duplicated," which Dewberry construed as meaning that such benefits were a credit against UMC.
We have concluded that two or more insurers providing UM coverage should share the net UM liability in proportion to the insurance available to the claimant under their respective policies.[7] Statutory credits should be applied without regard to source. Our rationale is this: each insured pays a distinct premium for each coverage afforded by a policy of insurance; theoretically, at least, each coverage could as easily be provided by a separate policy; in fact, each coverage could be provided by a different insurer without affecting the practicalities and realities of the situation. Why, then, should the fact that one carrier provided collateral benefits from one coverage entitle only it to credit against its share of the liability accruing on a separate coverage?
In the case before us, Kenilworth's policy contains a provision which reduces the UM insurance available to a claimant by the amount of any benefits paid to that claimant under the liability coverage provided by the policy, and vice versa. Thus, Kenilworth's liability is limited to $15,000 for the injury of one person, irrespective of which coverage is charged with the payment. Since appellant's negligence has been neither established nor asserted by appellee, his liability insurance is not available to her. Consequently, the UMC afforded appellee under the Kenilworth policy cannot be reduced on that account.
Further, neither insurance policy contains a provision for reduction of the UM coverage if benefits are paid a UM claimant under the PIP coverage of that policy. Accordingly, since the UM coverage provided by the two policies is not subject to reduction pursuant to contractual limitation, the UM insurance available to appellee is the undiminished UM coverage, $40,000. As it works out under the peculiar facts of this case, the stipulation by Kenilworth and State Farm to share liability in proportion to the coverage stated in their respective policies exactly coincides with their legal obligation to share liability in proportion to the UM insurance available under their respective policies. As we have indicated, such coincidence will not occur in every case.
In view of our conclusion that appellant's negligence cannot be considered because (1) appellee did not allege it, (2) it is not determined by the judgment, and (3) no one appealed the denial of the cross-claim, we do not reach State Farm's argument as to the effect of appellant's liability insurance becoming available to appellee.
The judgment is affirmed.
HOBSON, Acting C.J., and GRIMES, J., concur.
NOTES
[1] Kenilworth's reliance upon Sellers v. United States Fidelity & Guaranty Co., 185 So.2d 689 (Fla. 1966) as support for the proposition that only the higher limits of UMC, i.e., the $25,000 under the State Farm policy, is available to appellee under the express condition of its policy, is truly baffling. That case explicitly holds that such conditions are contrary to public policy and therefore void.
[2] Section 16 of ch. 266, Laws of Fla. (1976), provides:

This act shall take effect October 1, 1976, and shall apply to all claims arising out of accidents occurring on or after said date.
[3] It should be noted that the statute does not include other under/uninsured motorist coverage among the specified collateral insurance benefits not to be duplicated. This significant omission has direct impact on the contention made here by both insurers that UM coverage, even by separate insurers in separate policies covering separate vehicles, cannot be combined. The statute, at least, compels no such result.
[4] In 1979 the legislature answered that question by again amending the statute, to provide that "Only the underinsured motorist's automobile liability insurance shall be set off against underinsured motorist coverage." UMC evidently will provide excess coverage to benefits from the other enumerated sources. But that does not help the present case.
[5] Kenilworth was the only party injured by the failure to establish appellant's negligence. Had Kenilworth paid appellee $15,000 in liability insurance, it would have had no liability to her for UMC (under the provisions of its policy) and therefore could not have been ordered to pay her attorneys' fees.
[6] A similar situation was resolved in Hunt v. State Farm Mutual Insurance Co., 349 So.2d 642, 645 (Fla. 3d DCA 1977) by a terse instruction that the UMI liability "must be prorated." The proper basis of proration, however, was not specified.
[7] We have devised a terminology which has been helpful to us in clarifying and resolving the problems we faced in this case. UM "coverage" is the stated limit of protection furnished by the insurance policy or policies. UM insurance "available" is equal to coverage less any reductions specified by the insurance contract. UM insurance "liability," where the total claim exceeds total coverage, is the UM insurance available less any statutory offsets.