929 So.2d 1202 (2006)
LEE COUNTY, Florida, Appellant,
v.
Tina BROWN, individually and on behalf of others similarly situated; First Home Builders of Florida, a Florida partnership, on its own behalf and on behalf of other general contractors similarly situated; Lee Building Industry Association, Inc., a Florida corporation, on its own behalf and on behalf of its members and others similarly situated; and Patricia Shatto, individually, and on behalf of others similarly situated, Appellee.
No. 2D05-2711.
District Court of Appeal of Florida, Second District.
June 9, 2006.
*1203 Gregory T. Stewart and Harry F. Chiles of Nabors, Giblin & Nickerson, P.A., Tallahassee; and David M. Owen, Lee County Attorney, and John S. Turner, Assistant County Attorney, Fort Myers, for Appellant.
Jeffrey R. Garvin, Theodore L. Tripp, Jr., and Elisa W. Worthington of Garvin & Tripp, P.A., Fort Myers, for Appellees.
STRINGER, Judge.
Lee County seeks review of the final summary judgment, in which the trial court found that a school impact fee ordinance constitutes a facially unconstitutional impairment on construction contracts. Because there are circumstances under which the school impact fee ordinance would be valid, the trial court's determination that it is facially unconstitutional is erroneous. Accordingly, we reverse and remand for further proceedings.
In November 2001, the Lee County Board of County Commissioners adopted Lee County Ordinance No. 01-21 ("the Ordinance"). Pursuant to the Ordinance, a person who applies to Lee County or to any municipality within Lee County for issuance of a building permit, mobile home move-on permit, or mobile home park development order for the purpose of making a residential improvement to the land for one of the uses specified in the Ordinance must pay a school impact fee. The Ordinance imposes a school impact fee of $2232 for single-family residences; $691 for multi-family residences, duplexes, two-family attached homes, or townhouses; and $425 for mobile homes. The Ordinance became effective December 1, 2001.
Lee County subsequently adopted Ordinance No. 01-22, which amended the Ordinance to allow those applicants who had submitted their applications for building permits prior to December 1, 2001, and *1204 who were issued building permits prior to March 1, 2002, to avoid paying the school impact fee.
The Ordinance thus requires payment of the school impact fee prior to the issuance of building permits after December 1, 2001, but exempts those whose permit applications had been submitted prior to December 1, 2001, and were issued prior to March 1, 2002. The school impact fee is assessed regardless of when the contracts for the sale or development of land were executed.
On behalf of a class of persons who had executed such contracts prior to December 1, 2001, but had not qualified for the exemption, Tina Brown, First Home Builders of Florida, and Lee Building Industry Association, Inc., ("Plaintiffs") filed an action seeking a declaratory judgment that the assessment of the school impact fee constitutes an unconstitutional impairment of their contract rights under the contract clause in article I, section 10 of the Florida Constitution, both facially and as applied.[1] Plaintiffs subsequently filed their first amendment to the complaint, which joined Patricia Shatto as a named plaintiff. The trial court eventually certified a class/subclass, with Shatto as the sole class/subclass representative, defined as: "All parties who have paid or been assessed an impact fee pursuant to the Lee County school impact fee Ordinance (01-21) in order to obtain a building permit, mobile home move-in permit or mobile home park development order."
The trial court granted summary judgment in favor of Plaintiffs based on its finding that the Ordinance was facially unconstitutional as an impairment of contracts in violation of the contract clause. The trial court held that the Ordinance placed an impermissible burden on contracts executed prior to December 1, 2001, and, therefore, was facially unconstitutional as to all Plaintiffs who had executed contracts prior to December 1, 2001. The court reasoned:
Citizens cannot be charged reasonably with notice of the consequence of impending legislation before the effective date of that legislation. Dewberry v. Auto-Owners Insurance Company, 363 So.2d 1077, 1080 (Fla.1978). Furthermore, rights existing under a valid contract enjoy protection under the Florida Constitution. Green v. Quincy State Bank, 368 So.2d 451 (Fla. 1st DCA 1979).
The trial court did not reach Plaintiffs' as-applied challenge under the contract clause.
On appeal, Lee County argues that the Ordinance is not facially unconstitutional because it does not impair each and every contract executed prior to its effective date. Lee County also asserts that the contract clause is not applicable when the government establishes regulations pursuant to its police powers. Alternatively, Lee County asserts that the trial court erred in failing to apply the balancing test adopted by the Florida Supreme Court in *1205 Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla.1979), to determine whether the Ordinance constitutes an unconstitutional impairment of Plaintiffs' contract rights.
Plaintiffs argue that the Ordinance is facially unconstitutional regardless of whether it impairs each and every contract executed prior to its effective date because it does not contain a savings clause exempting all contracts in existence prior to its effective date. Plaintiffs also argue that, in Florida, contract rights enjoy nearly absolute protection from governmental interference irrespective of whether the interference is pursuant to the government's police powers. Plaintiffs assert that the trial court properly applied the per se analysis as explained in Dewberry. Plaintiffs also assert that, even if the Pomponio balancing test did apply, the Ordinance would fail to satisfy it.
We reverse on a variation of the first basis argued by Lee County. We conclude that the trial court erred in determining that the Ordinance is facially unconstitutional because circumstances exist under which the statute could be validly applied to require payment of the school impact fee prior to issuance of building permits.
"[A] determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid." See Fla. Dep't of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005); State v. Bales, 343 So.2d 9, 11 (Fla.1977). The trial court determined that the Ordinance "retroactively places an impermissible burden on those contracts which were executed prior to December 1, 2001, and clearly constitutes an impairment of contract which is facially unconstitutional." However, this finding only suggests that the Ordinance is unconstitutional as applied to contracts that were executed prior to December 1, 2001. The court did not find, and Plaintiffs have not argued, that the Ordinance cannot be constitutionally applied to those contracts executed after the effective date of the Ordinance, which will encompass the greater part of the Ordinance's application. Thus, the trial court misapplied the standard for determining the facial constitutionality of the Ordinance.
Lee County argues that the Ordinance is not facially unconstitutional because it does not impair each and every contract executed prior to its effective date. This argument is based on the fact that several of the contracts specifically provide for the payment of impact fees or state that payment of impact fees is not governed by the contract. This argument is well taken, but for purposes of determining the facial validity of the Ordinance, our review is not limited to those contracts executed prior to the effective date of the Ordinance.
We are aware that the First District in Department of Revenue v. Florida Home Builders, 564 So.2d 173 (Fla. 1st DCA 1990), declared an analogous law facially unconstitutional. In Florida Home Builders, the First District held that the chapter law that provided for a construction tax unconstitutionally impaired contracts executed before May 1, 1987, but not completed by June 30, 1989. 564 So.2d at 176. The provision at issue imposed a tax on prime contractors for "sales, use and other transactions on the sale and use of services." Id. at 174. The provision was effective on April 23, 1987, and exempted those whose contracts had been signed prior to May 1, 1987, and whose performance was fully rendered prior to June 30, 1989. The construction tax was otherwise assessed for contracts executed prior to May 1, 1987. The court held that the tax law was facially unconstitutional in violation of the contract clause "[w]ith regard *1206 to contracts entered into prior to May 1, 1987 but not completed by June 30, 1989" because it added "an unknown, uncontemplated cost" to the contracts. Id. at 174-75. It based its holding on a prior finding by the supreme court in In re Advisory Opinion to the Governor, 509 So.2d 292 (Fla.1987), that a previous version of the same law was facially unconstitutional. Id.
We do not agree with the First District's conclusion in Florida Home Builders that its determination that the construction tax was unconstitutional as to "contracts entered into prior to May 1, 1987 but not completed before June 30, 1989" is a determination of the law's facial validity. The court did not declare the tax law unconstitutional in its entirety or void; in fact, it expressly held that the tax law was constitutional "as it affects those contracts entered into between May 1, 1987 and the effective date of [the chapter law], July 1, 1987" because the enactment of the chapter law placed contractors on notice that they should consider the tax burden when executing new contracts. Id. at 176. We think the First District's reliance on the supreme court's previous decision in In re Advisory Opinion was misplaced because the supreme court was not reviewing a trial court's determination of constitutionality of the construction tax law but was issuing an advisory opinion regarding the constitutionality of the law. The supreme court was not called upon to determine the law's facial sufficiency, or whether any set of circumstances exists under which the statute would be valid, but to opine as to whether it violated the contract clause on its face, or without resort to the particular facts of its application. Thus, the supreme court did not make a ruling striking the law as facially unconstitutional.
We therefore reverse the final summary judgment based on our conclusion that the Ordinance is not facially unconstitutional. Because the trial court did not reach the as-applied challenge to the constitutionality of the Ordinance, it will be necessary for the trial court to address that issue on remand. In order to assist the court in making that determination, we address the parties' disputes regarding whether the contract clause applies and what law applies to determine whether the contract clause has been violated.
Lee County asserts that, pursuant to Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla.1974), the contract clause is not applicable when the government establishes regulations pursuant to its police powers. Lee County asserts that we should apply the analysis that the Third District applied in City of Key West v. R.L.J.S. Corp., 537 So.2d 641 (Fla. 3d DCA 1989), which was adopted by the Fourth District in City of Hallandale v. ACMAR Engineering Corp., 560 So.2d 802 (Fla. 4th DCA 1990), to determine whether Lee County properly exercised its police powers in enacting the Ordinance.
Plaintiffs argue that, in Florida, contract rights enjoy nearly absolute protection from governmental interference irrespective of whether the interference is pursuant to the government's police powers. Plaintiffs argue that City of Key West and City of Hallandale are inapposite because they did not address constitutional challenges regarding the contract clause.
Lee County's reliance on Palm Beach Mobile Homes is misplaced because the Florida Supreme Court did not declare the contract clause inapplicable but applied a contract clause analysis to determine that legislation enacted pursuant to the government's police powers did not violate the contract clause. See 300 So.2d 881. The Palm Beach Mobile Homes court applied what the supreme court later called the *1207 "Obligation-Remedy" test[2] in which the court looks not to the effect the legislation has on the contract to determine whether it violates the contract clause, but to "`whether it is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.'" Id. at 887 (quoting Mahood v. Bessemer Prop., Inc., 154 Fla. 710, 18 So.2d 775, 779 (1944)). To the extent that Lee County argues for the application of the "Obligation-Remedy" test, this test has since been rejected by the Florida Supreme Court. See Pomponio v. Claridge of Pompano Condo., Inc., 378 So.2d 774 (Fla. 1979).
Lee County's reliance on City of Key West and City of Hallandale is also misplaced because, as is argued by Plaintiffs, these cases do not address constitutional challenges regarding the contract clause. Instead, they address an argument that the imposition of an impact fee violates the doctrine of vested rights. Thus, Lee County's argument that the contract clause is not applicable is without merit.
Now that we have determined that the contract clause applies, the question remains whether to apply the balancing test of Pomponio or the per se test of Dewberry, which was espoused by the First District in Florida Home Builders, to determine whether the Ordinance impairs the contract clause as applied. We conclude that both tests are viable, and the determination of which test to use will depend upon the degree of impairment to each individual plaintiff.

A. Florida Home Builders

As we already stated, in Florida Home Builders, the First District held that a construction tax law unconstitutionally impaired contracts executed before May 1, 1987, but not completed by June 30, 1989. 564 So.2d at 176. The court held that the law was facially unconstitutional in violation of the contract clause "[w]ith regard to contracts entered into prior to May 1, 1987 but not completed by June 30, 1989" because it added "an unknown, uncontemplated cost" to the contracts. Id. at 174-75. The First District relied on In re Advisory Opinion, 509 So.2d 292, in which the Florida Supreme Court opined that an earlier version of the same law was unconstitutional because it "`retroactively turn[ed] otherwise profitable contracts into losing propositions.'" Fla. Home Builders, 564 So.2d at 175 (quoting In re Advisory Opinion, 509 So.2d at 314-15). In In re Advisory Opinion, the supreme court relied on its prior holding in Dewberry for the proposition that "[a]ny legislative action which diminishes the value of a contract is repugnant to and inhibited by the Constitution." 509 So.2d at 314.
Dewberry involved a contract clause constitutional challenge to an anti-stacking insurance statute. 363 So.2d 1077. The effect of the statute in Dewberry was to reduce the plaintiff's uninsured motorist coverage from $200,000 to $100,000, even though the plaintiff had paid a higher premium for stacked coverage. Id. at 1079-80. The supreme court determined that the anti-stacking statute constituted an unconstitutional impairment of the right to contract based on the longstanding rule of law that "[a]ny conduct on the part of the legislature that detracts in any way from the value of the contract is inhibited by the Constitution." Id. at 1080 (quoting Pinellas County v. Banks, 154 Fla. 582, 19 So.2d 1, 3 (1944)). The Dewberry court also cited to Yamaha Parts Distribs., Inc. v. Ehrman, 316 So.2d 557 (Fla.1975). Dewberry was decided by the Florida Supreme Court in 1978.

*1208 B. Pomponio

In 1979, the Florida Supreme Court adopted an approach to analyzing contract clause claims "similar" to the approach of the U.S. Supreme Court. Pomponio v. Claridge of Pompano Condo., Inc., 378 So.2d 774, 779-80 (Fla.1979). The court began its analysis by reiterating its position in Yamaha Parts that "virtually no degree of contract impairment is tolerable in this state." Pomponio, 378 So.2d at 780. The court went on to note that this statement implied that "some impairment is tolerable, although perhaps not so much as would be acceptable under traditional federal contract clause analysis." Id.
The court then adopted the balancing test articulated by the U.S. Supreme Court in Allied Structural Steel v. Spannaus, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), to determine just how much impairment is tolerable. This test weighs the degree of impairment against the source of authority under which the law is enacted and the "evil" the law is intended to remedy. Pomponio, 378 So.2d at 780. "Obviously, this becomes a balancing process to determine whether the nature and extent of the impairment is constitutionally tolerable in light of the importance of the state's objective, or whether it unreasonably intrudes into the parties' bargain to a degree greater than is necessary to achieve that objective." Id.
The Pomponio court defined impairment as "to make worse; to diminish in quantity, value, excellency or strength; to lessen in power; to weaken." Id. at 781 n. 41. The court also noted several factors articulated by the Spannaus court to be considered in applying the balancing test:
(a) Was the law enacted to deal with a broad, generalized economic or social problem?
(b) Does the law operate in an area which was already subject to state regulation at the time the parties' contractual obligations were originally undertaken, or does it invade an area never before subject to regulation by the state?
(c) Does the law effect a temporary alteration of the contractual relationships of those within its coverage, or does it work a severe, permanent, and immediate change in those relationships irrevocably and retroactively?
Pomponio, 378 So.2d at 779 (footnotes omitted).
In applying this test, the Pomponio court determined that a statute that provided for the deposit of rents into the court registry during litigation concerning obligations under condominium leases was unconstitutional. Id. at 782. The court noted that the law was enacted pursuant to the State's police powers to promote the health, safety, and welfare of its citizens. Id. at 781. The "evil" the law sought to address was "the protection of unit owners from the lessor's foreclosure for non-payment of rent during the pendency of the litigation." Id. The court discounted this "evil" by stating that it was not aware of a threat of "massive condominium foreclosures" in Florida and held that the police power had not been wielded using the least restrictive means possible. Id. at 781-82.

C. Reconciling Florida Home Builders and Pomponio

Despite the Florida Supreme Court's adoption of the federal standard for analyzing contract clause challenges to government action in Pomponio, neither the First District in Florida Home Builders nor the supreme court itself in In re Advisory Opinion applied the Pomponio balancing test or even cited to the case. This court has explained that the Pomponio balancing test is not applicable when the legislation results in an immediate diminishment *1209 in value of the contract that "is repugnant to our constitutions." See Sarasota County v. Andrews, 573 So.2d 113, 115 (Fla. 2d DCA 1991).
In Andrews, the law at issue provided that the recording of an order imposing a fine by an administrative board becomes a lien that is superior to all other liens except those for taxes. Id. at 114. The law then subordinated a mortgagee's mortgage lien to the County's lien. Id. at 115. The trial court entered a final summary judgment determining that the offending portion of the law was an unconstitutional impairment of the contract clause as applied to the mortgagee. Id. at 114.
The County argued that summary judgment was improper under Pomponio because the mortgagee did not present evidence to show that it would suffer economic loss as a result of the subordinated lien. The County argued that the land might be of sufficient value to support both liens. This court affirmed the trial court's determination based on the supreme court's holding in Dewberry and In re Advisory Opinion that legislation that results in an immediate diminishment in value of the contract "is repugnant to our constitutions." Andrews, 573 So.2d at 115.
In doing so, this court declined to apply the balancing set forth in Pomponio:
[T]he priority provision has worked an immediate impairment on [the mortgagee's] preexisting mortgage lien. The nature of priority is such that [the mortgagee] is automatically at a substantially greater risk of losing its investment if it has only a second, as opposed to a first, priority lien. Furthermore, mortgages held by commercial institutions are frequently sold on the secondary market, and the subordination of [the mortgagee's] lien impairs the marketability of its mortgage....
Under the ordinance's scheme ... [the mortgagee] has no practical power to protect its security interests in property from being impaired and possibly eliminated. The only way it can preserve its contracted-for position as first lien holder is to pay off the County's lien, which it represents to be now close to double its own lien. . . . This would require an additional investment that [the mortgagee] neither contracted for nor could have anticipated when it made its loan to the Andrews before the ordinance was enacted.
Id.

D. Application
Under Andrews, it would be proper for the trial court to rely on the per se test of Dewberry and Florida Home Builders and decline to apply the Pomponio balancing test if it determines that the Ordinance results in an immediate diminishment in value of the contract that "retroactively turns otherwise profitable contracts into losing propositions" and therefore "is repugnant to our constitutions." This determination will differ for the individual plaintiffs, depending upon whether their contract contemplates the payment of the impact fee and the number of impact fees the plaintiff must pay. If the court does not determine that the application of Dewberry and Florida Home Builders is proper, it should apply the Pomponio balancing test to determine the constitutionality of the Ordinance as applied.
Reversed and remanded.
NORTHCUTT and LaROSE, JJ., Concur.
NOTES
[1] The complaint also alleged that the school impact fee failed to satisfy the dual rational nexus test as adopted by the supreme court in Contractors & Builders Ass'n of Pinellas County v. City of Dunedin, 329 So.2d 314 (Fla. 1976). The parties entered into a joint stipulation that bifurcated, for trial, the dual rational nexus claim from the impairment of contract claim. In March 2004, the trial court held a bench trial on the validity of the school impact fee under the dual rational nexus test. The trial court entered a partial final judgment in favor of Lee County, holding that the school impact fee satisfied the dual rational nexus test and, therefore, was valid. This court subsequently affirmed the trial court's holding in a per curiam opinion. See Brown v. Lee County, 912 So.2d 1223 (Fla. 2d DCA 2005) (table opinion).
[2] See Pomponio v. Claridge of Pompano Condo., Inc., 378 So.2d 774, 776 (Fla.1979).