*50
 
 WARNER, J.
 

 Florida Insurance Guaranty Association (“FIGA”) appeals a non-final order denying its motion to compel an appraisal of property damage to condominium association property owned by the Devon Neighborhood Association, Inc. (“Devon”). Devon claimed that FIGA had waived its right to an appraisal by participating in the lawsuit and also by failing to comply with section 627.7015, Florida Statutes. We hold that FIGA is precluded from asserting its right to compel the appraisal process by failing to provide the notice required by the statute, the application of which does not violate the impairment of contracts clause of the constitution. We affirm.
 

 Devon timely filed a claim with its insurer, Southern Family Insurance (“Southern”), after the condominium association property sustained damage when Hurricane Wilma struck in October 2005. Devon submitted its first sworn proof of loss claim in February 2006. Southern became insolvent and was placed into receivership in April 2006. By operation of law, FIGA assumed responsibility for Devon’s claim. Three days later, Devon submitted a second sworn proof of loss statement, increasing the claimed amount of loss. It is undisputed that before becoming insolvent, Southern paid Devon approximately $2.5 million. FIGA paid Devon an additional $1.7 million for a total payment of $4.2 million. In December 2007, a contracting company hired by Devon estimated additional damage in the amount of $4.8 or $5 million. The additional claims involve three roofs and replacing all the glass sliders and windows. Devon submitted the report with the $4.8 million in additional claims to FIGA on January 30, 2008, and FIGA refused to pay.
 

 On February 11, 2008, Devon filed a two-count complaint against FIGA. Count I alleged breach of contractual and statutory duties in failing to fully compensate it for all losses covered under the policy. Count II sought a declaration of the validity of the insurance contract, a determination of Devon’s rights and obligations under the policy, a determination of whether the damages and losses were covered claims, and a declaration that the deductible provisions were void. FIGA answered, alleging various affirmative defenses, and demanding an appraisal of the damages pursuant to the terms of the Southern policy.
 

 FIGA moved to compel an appraisal. Devon objected, both because it contended that FIGA had waived its right by participating in the lawsuit and because both Southern and FIGA had failed to comply with section 627.7015(2), Florida Statutes (2005), by not notifying Devon of the statutory mediation process available to it. Failure to do so prevented the insurer from insisting on the appraisal process as a precondition to legal action, in accordance with the statute. Ultimately, the trial court denied the motion to compel the appraisal, prompting this appeal pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv).
 

 FIGA claims that it is not bound by the notice provisions of section 627.7015(2), as the amendment which would have applied the statute to the insurance contract in this case was enacted after the policy went into effect. It contends that to apply it to the contract would amount to an unconstitutional impairment of contract. Because these issues are ones of constitutional and statutory interpretation, our review is de novo.
 
 Fla. Hosp. Waterman, Inc. v. Buster,
 
 984 So.2d 478, 485 (Fla.2008). Balancing the nature and extent of the impairment of contract with the state’s objective goals, we conclude that the statutory amendment is constitu
 
 *51
 
 tionally permissible.
 
 See Pomponio v. Claridge of Pompano Condo., Inc.,
 
 378 So.2d 774 (Fla.1979).
 

 Section 627.7015 establishes a mediation alternative for the handling of property insurance claims. The legislatively approved purpose provided:
 

 There is a particular need for an informal, nonthreatening forum for helping parties who elect this procedure to resolve their claims disputes because most homeowner’s and commercial residential insurance policies obligate insureds to participate in a potentially expensive and time-consuming adversarial appraisal process prior to litigation. The procedure set forth in this section is designed to bring the parties together for a mediated claims settlement conference without any of the trappings or drawbacks of an adversarial process. Before resorting to these procedures, insureds and insurers are encouraged to resolve claims as quickly and fairly as possible.
 

 § 627.7015(1), Fla. Stat. (2005). Upon receiving a claim, the insurer must notify the claimant of its right to mediation. § 627.7015(2), Fla. Stat. (2005).
 

 The version of the statute in effect when the policy in this case became effective provided for mediation for homeowners’ residential policies only. The legislature amended the statute, effective July 1, 2005, extending the mediation alternative to “commercial residential insurance policies.” Included within the statutory definition for such policies is coverage provided by condominium associations for common elements.
 
 See
 
 § 627.4025, Fla. Stat. (2005). The policy in this case constituted a commercial residential policy.
 

 The amended statute also added a penalty for the insurer’s failure to comply with the notice requirements: “[T]he insured shall not be required to submit to or participate in any contractual loss appraisal process of the property loss damage as a precondition to legal action for breach of contract against the insurer for its failure to pay the policyholder’s claims covered by the policy.” § 627.7015(7), Fla. Stat. (2005).
 

 It is undisputed that the notice provisions of section 627.7015(2) were not complied with in this case. FIGA, however, contends that the provisions of the amended statute cannot be applied retroactively because the insurance contract was executed prior to the date of the statutory amendment, even though the loss occurred and the claim was submitted after the enactment of the amendment.
 

 The prior version of the statute, which was in effect at the time the parties entered into the contract, did not apply to condominium associations nor did it provide a penalty for failing to notify the claimant of its right to mediation.
 

 Similar to the federal constitutional contract clause, Article I, Section 10 of the Florida Constitution, prohibits the enactment of any “law impairing the obligation of contracts.” In
 
 Pomponio,
 
 after reviewing the evolution of contract clause analysis by the United States Supreme Court from strict prohibition to the use of a balancing approach, the Florida Supreme Court itself adopted a balancing approach to determine whether a statute amounted to a constitutionally impermissible impairment of contract. The court said:
 

 In our view, any realistic analysis of the impairment issue in Florida must logically begin both with
 
 Yamaha Parts Distributors, Inc. v. Ehrman,
 
 [316 So.2d 557 (Fla.1975) ] which applied the well-accepted principle that virtually no degree of contract impairment is tolerable in this state, and with the notion enunciated in
 
 Louisiana ex rel. Ranger v. New Orleans,
 
 [102 U.S. 203, 26 L.Ed. 132
 
 *52
 
 (1880) ] that “he who pays too late, pays less.”
 

 Our conclusion in
 
 Yamaha
 
 that “virtually” no impairment is tolerable necessarily implies that some impairment is tolerable, although perhaps not so much as would be acceptable under traditional federal contract clause analysis.
 

 To determine how much impairment is tolerable, we must weigh the degree to which a party’s contract rights are statutorily impaired against both the source of authority under which the state purports to alter the contractual relationship and the evil which it seeks to remedy. Obviously, this becomes a balancing process to determine whether the nature and extent of the impairment is constitutionally tolerable in light of the importance of the state’s objective, or whether it unreasonably intrudes into the parties’ bargain to a degree greater than is necessary to achieve that objective.
 

 378 So.2d at 780 (footnotes omitted). The court noted that in
 
 Allied Structural Steel Co. v. Spannaus,
 
 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), the Supreme Court listed factors to be considered in a balancing test:
 

 (a) Was the law enacted to deal with a broad, generalized economic or social problem?
 

 (b) Does the law operate in an area which was already subject to state regulation at the time the parties’ contractual obligations were originally undertaken, or does it invade an area never before subject to regulation by the state?
 

 (c) Does the law effect a temporary alteration of the contractual relationships of those within its coverage, or does it work a severe, permanent, and immediate change in those relationships irrevocably and retroactively?
 

 Pomponio,
 
 378 So.2d at 779 (footnotes omitted).
 

 At issue in
 
 Pomponio
 
 was a statutory requirement that condominium lease payments be deposited in court during the pendency of litigation over the lease. A developer could not withdraw those payments during the litigation. “Barring the current use of court-retained rent moneys is an economic deprivation for which a landlord obviously has not bargained, producing potential erosion of value (at least in our persistently inflationary economy) which goes beyond mere inconvenience.”
 
 Id.
 
 at 780-81. The court determined that this impaired the landlord’s contract. Balanced against this economic deprivation, the statute expressed no policy or objective for the restriction, although the court determined that the state exercised its police power to protect the public. In sum, however, the court did not find that the state’s interest outweighed the impairment of the landlord’s contract.
 

 In
 
 United States Fidelity & Guaranty Co. v. Department of Insurance,
 
 453 So.2d 1355 (Fla.1984), the court applied the
 
 Pomponio
 
 balancing analysis to hold that an amendment to the automobile excess profits law, which authorized the Department of Insurance to order refunds of excess profits from insurance carriers, was not an unconstitutional impairment of existing contracts. While noting that complete destruction of contractual expectations is not necessary for a finding of substantial impairment, the court did not consider a regulation that restricts a party to reasonable expectations of gains on a contract as substantially impairing the contract. The court further considered the extent to which the industry complaining was subject to regulation in the past, noting that the insurance industry is subject to substantial regulation in Florida.
 
 *53
 
 The state’s purpose in the enactment was to prevent excess profits in a regulated industry. The court found that the impairment was minimal and was outweighed by the state’s interest in eliminating windfall profits.
 

 We have recently applied the
 
 Pomponio
 
 analysis to conclude that a constitutional amendment establishing a patient’s right to discover medical records involving an adverse medical incident did not unconstitutionally impair a hospital’s contract with its doctors which included confidentiality provisions.
 
 See Columbia Hosp. Corp. of S. Broward v. Fain,
 
 16 So.3d 236 (Fla. 4th DCA 2009).
 

 In contrast, the
 
 Pomponio
 
 balancing test does not apply where a statute results in the immediate diminishment of value in a contract.
 
 See Dewberry v. Auto-Owners Ins. Co.,
 
 363 So.2d 1077 (Fla.1978) (anti-stacking provision of uninsured motorist statute unconstitutionally reduced value of policy procured prior to its passage);
 
 Lee County v. Brown,
 
 929 So.2d 1202, 1209 (Fla. 2d DCA 2006) (imposition of school impact fee to building contracts unconstitutional if it “retroactively turns otherwise profitable contracts into losing propositions”). The statutory provision in this case does not result in an immediate diminishment in the value of a contract. Therefore, the
 
 Dewberry
 
 principle does not apply.
 

 Instead, we apply the
 
 Pomponio
 
 balancing test. First, the degree of impairment of the insurance contract is minimal. The insurance company must provide notice of the opportunity to mediate an insurance claim. Mediation is nonbinding. While the statute requires the insurer to bear the costs of mediation, namely the costs of the mediators and an administrative fee, we do not deem that of significance, particularly in light of
 
 U.S. Fidelity,
 
 where the court deemed that the much more substantial economic impact of recovery of excess profits constituted a minimal impairment of contract. Not every contract will be mediated. The costs of mediation are significantly less than the costs of an appraisal.
 

 Against that minimal impact, the state’s purpose is explicit and reflects a substantial economic issue for homeowners. The state recognized that the appraisal process was both time-consuming and expensive for homeowners. Mediation in advance of the process could substantially reduce costs to both homeowners and insurers. The legislature identified the cost of such appraisals to homeowners as a broad economic problem, whose solution in this manner is a proper exercise of the state’s authority.
 
 See, e.g., U.S. Fidelity,
 
 453 So.2d at 1360 (“If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem.”) (citation omitted).
 

 The regulation affects insurance, a heavily regulated industry. The contents of insurance policies and the procedures for handling claims are regulated by statutes as well as Department of Insurance regulations.
 
 See, e.g.,
 
 § 627.701, Fla. Stat., et seq. The statute in question affects in a minimal way the process of settling a claim. It does not permanently and substantially change the contractual arrangements between the parties.
 

 Based upon an application of the balancing test, we find that the statutory amendment subjecting commercial residential insurance policies to the mediation provisions of section 627.7015 was not an unconstitutional impairment of the existing insurance policy. Since neither the original insurer, Southern, nor FIGA
 
 *54
 
 complied with its notice provisions, FIGA cannot now demand the completion of the appraisal process as a precondition to litigation.
 

 FIGA also argues that the notice provisions of the statute (and the consequent loss of appraisal rights) should not apply to it, because it is a creature of statute and is not subject to all the liability of the insurer. However, section 631.57(l)(b), Florida Statutes, provides that FIGA shall “[b]e deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights,
 
 duties,
 
 defenses,
 
 and obligations
 
 of the insolvent insurer as if the insurer had not become insolvent.” (Emphasis supplied). One of the duties of the insurer was compliance with the provisions of section 627.7015. The cases cited by FIGA for the proposition that it should not be liable for an insurer’s violation of statute are inapposite as they all deal with coverage of a loss. Here, no coverage issue is involved. Only the process of settling the claim is affected by the statute.
 

 Finally, FIGA argues that where notice of the mediation process is not supplied, the statute requires only that the insured is not required to participate in any contractual appraisal process of the property losses “as a precondition to legal action” for breach of the insurance contract for non-payment. Because the policy in question does not make the appraisal a “precondition” to suit, the statute is in effect irrelevant. We find this argument meritless. FIGA moved to compel an appraisal and
 
 stay
 
 the action in the trial court pending the appraisal. If the action is stayed, FIGA is preventing further legal action until the appraisal is accomplished. It has treated the appraisal as a precondition to legal action.
 

 For the foregoing reasons, we affirm the trial court’s ruling.
 

 POLEN and TAYLOR, JJ., concur.